[No. 29738. Department Two. March 28, 1946.]

THE STATE OF WASHINGTON, *Respondent,* v. LYLE O'NEIL, *Appellant.*[1]

[1] Reported in 167 P. (2d) 471.

*Fred M. Bond,* for appellant.

*John T. Welsh* and *Robert A. Hannan,* for respondent.

DRIVER, C. J.—By an information containing two counts, defendants, Lyle O'Neil and Clifford Ketchel, were accused of second-degree assault and first-degree burglary. Omitting the formal parts, count No. 1 charged that defendants did

" . . . assault the person of Frank H. Spray and did strike and wound said Frank H. Spray about the body and face, and did wilfully inflict grievous bodily harm upon said Frank H. Spray, with weapons, to-wit: a bottle or bottles partially filled with wine or some other liquid and pieces of broken glass; and said defendants and each of them did

wilfully assault said Frank H. Spray with said bottles and pieces of broken glass, said bottles and pieces of broken glass being weapons or other instruments or things likely to produce bodily harm, and said defendants and each of them did assault said Frank H. Spray with intent to commit a felony, to-wit: the crime of burglary in the first degree by breaking into the apartment or living quarters of said Frank H. Spray."

Count No. 2 charged that, at the same time and place mentioned in count No. 1, defendants did

" . . . break and enter, in the night time, the dwelling house of another, to-wit: the living quarters or apartment of Frank H. Spray, in which time and place there was a human being present within said dwelling house, to-wit: the person of Frank H. Spray with intent to commit a crime therein; and said defendants and each of them did break and enter said dwelling house, being armed with a dangerous weapon or weapons, to-wit: a wine or other kind of bottle or bottles partially filled with liquid and a piece or pieces of broken glass, and said defendants and each of them, while engaging in the night time in effecting said breaking and entering, did then and there assault the person of said Frank H. Spray."

The case came on for hearing before the court and a jury May 18, 1944. At the conclusion of the state's case, the court dismissed the assault charge in count No. 1 as to defendant Ketchel. The court submitted to the jury three forms of possible verdict as to count No. 1: A, finding defendant O'Neil guilty of assault in the second degree; B, finding him guilty of assault in the third degree; and C, finding him "not guilty of assault." The jury rejected forms A and B and returned as its verdict form C, finding defendant O'Neil not guilty of assault. On count No. 2, as to each defendant, the jury returned a verdict of guilty of an attempt to commit burglary in the first degree.

Motions in arrest of judgment and for new trial in behalf of defendant O'Neil were denied. The court deferred the entry of judgment and sentence however, and, by an order entered June 30, 1944 (subsequently superseded by other similar orders), placed defendants on probation under certain conditions therein specified. Defendant O'Neil vio-

lated the conditions of his probation, and, on July 20, 1945, the court entered judgment and sentence, from which he has taken this appeal.

By his assignments of error, appellant presents two questions: first, whether the verdict of guilty of attempted first-degree burglary under count No. 2 was inconsistent with the verdict of not guilty of assault under count No. 1; and, second, whether the evidence was sufficient to support the verdict of guilty.

A summary of the evidence presented to the jury is as follows: On the evening of March 18, 1944, appellant, who was then twenty-one years of age, and his codefendant, Clifford Ketchel, then seventeen years old, after taking their wives downtown in Raymond, separated from each other. Ketchel became involved in a beer-tavern altercation, which led to a fight between him and one Frank Spray, a fifty-nine-year-old logger. Ketchel then left, and Spray went to his living quarters, which consisted of two rooms on the street level and in the same building as the beer tavern where the trouble started.

A short time later, according to Spray's testimony, someone knocked at his door and asked to be admitted. When he drew aside the curtain that covered the glass panel in the door and looked out, he saw several men ("4 or 5 parties . . . about six, surely six") outside. He told them that they could not come in, but they insisted upon doing so. Someone broke the glass panel in the door, and Ketchel "put his hand in to open the latch." Appellant

" . . . pulled the curtain and the curtain flew up and of course then the door was wide open. A window about twenty-six by thirty, something like that, but there was a small hole through the window where his fist went through the glass. Mr. O'Neil pulled out the glass and chunked them back and threw through the window at me."

(On cross-examination, Spray testified that Ketchel broke the hole in the glass by putting his left fist through it, and that he did not see appellant O'Neil break "any window.")

Some of the pieces of glass that appellant threw struck Spray on the side of the head and on the hand, but he

"didn't get cut [very] bad." He "picked up the ax" to protect his face. The record does not show the size or thickness of the pieces of glass appellant threw at Spray. The latter testified that, "when it [the glass] was broken it all went to slivers; Mr. O'Neil pulled them out of the door and threw them at me." Spray also stated that "they threw three bottles" through the hole in the door and that one bottle struck him on the arm. On cross-examination, however, he further testified:

"I could not tell who threw these bottles. Q. You don't know whether Ketchel threw any? A. No. Q. You don't know whether O'Neil threw any? A. No."

No witness testified that either appellant or Ketchel threw a bottle or that either of them ever had a bottle in his hand during the disturbance at Spray's quarters.

When Ketchel failed to unlatch the door by reaching in through the hole in the broken glass panel, he "kicked the door in," smashed the lower panel of veneer wood, and broke the latch off the door. It was then a little past midnight, and the crowd had grown to about twenty-five. Two policemen, attracted by the commotion, came up to investigate. They saw Ketchel kick the door once. Appellant O'Neil was standing with his hands on the door. The policemen told appellant and Ketchel and the rest of the crowd to disperse and "clean out for home," and took Spray to a hotel in Raymond. Spray "had been drinking." The only one of the two policemen who was asked about it did not remember seeing any scratches on Mr. Spray's face or about his head. The chief of police of Raymond, who saw him shortly after noon on March 19th, observed that he then had a black eye "and a few scratches on his face."

The testimony of appellant and his witnesses was to the effect that, when Ketchel came back after his fight with Spray, Ketchel and appellant and their wives went to Spray's place, and, as they approached, saw Spray go into his quarters with an ax in his hands. Ketchel knocked on the door and asked Spray to come out, but he refused to do so. A crowd gathered, and the policemen came along and sent them home. Both appellant and Ketchel denied

that either of them had broken the glass in the door, kicked the door, or had thrown any bottles or pieces of glass at Mr. Spray.

By count No. 2 of the information, appellant was charged with first-degree burglary, but he was found guilty of an attempt to commit that offense. An attempt to commit a crime is an act done with intent to commit that crime and tending, but failing, to accomplish it (Rem. Rev. Stat., § 2264 [P. P. C. § 112-21]). Our problem as to the question of the sufficiency of the evidence to sustain the verdict of guilty is to determine whether there is any substantial, competent evidence, or reasonable inference from the evidence, to establish the essential elements of the offense of attempted burglary in the first degree.

With exceptions not applicable here, first-degree burglary is the entering in the nighttime, with intent to commit some crime therein, of the dwelling house of another in which there is at the time a human being, and under such circumstances that there is present one or more of the essential incidents or elements of aggravation enumerated in the statute (Rem. Rev. Stat., § 2578 [P. P. C. § 113-75]). Count No. 2 of the information sets forth two such incidents of aggravation: first, being armed with a dangerous weapon; and, second, assaulting Mr. Spray while engaged in entering his dwelling. There must be some substantial evidence to show that the attempt embraced one or the other of the two alleged circumstances of aggravation just stated, if the verdict of guilty is to stand; for the offense charged would not be burglary in the *first* degree without the presence of at least one of them.

With reference to the first incident of aggravation stated above, there is no evidence in the record that either appellant or Ketchel was armed with a dangerous weapon, such as a gun or knife. There is no evidence that either of them threw a bottle or had a bottle in his hands. The only evidence as to an arming, or attempted arming, with a dangerous weapon is the testimony of Mr. Spray that appellant had picked some pieces of glass out of the broken panel in the door and threw them at him. Even if we adopt

the doubtful assumption that, by picking up and immediately throwing into the room the pieces of broken glass, appellant armed himself with them within the meaning of our first-degree burglary statute, we still have a failure of proof as to their constituting a dangerous weapon, for there is no evidence in the record as to their size, thickness, or weight. Mr. Spray referred to them as "slivers." He testified that they struck him on the side of the head, but there is no evidence as to what character of wound was inflicted. Evidently it was not sufficiently serious to be noticed by the policeman who escorted Spray to the hotel. There is no substantial evidence that appellant armed himself with a weapon likely to produce death or great bodily harm in connection with an entry, or attempted entry, of Mr. Spray's dwelling house.

What, then, of the only other alleged essential element of aggravation, namely, the commission of an assault as an incident to the burglarious entry? The testimony of Mr. Spray that appellant threw pieces of broken glass at him was sufficient, if believed by the jury, to support a finding of third-degree assault (Rem. Rev. Stat., § 2415 [P. P. C. § 113-41]; 1 Wharton's Criminal Law (12th ed.) 1102, § 806). But evidently the jury did not believe Spray's testimony in that regard, for, by its verdict on count No. 1, it found appellant not guilty of third-degree assault. That finding necessarily is inconsistent with a verdict of guilty of attempted burglary in the first degree, where, under the information and the evidence, the establishment of the requisite degree of burglary must rest upon an assault accompanying the burglarious entry.

The authorities are not in accord as to the effect of inconsistency in a verdict on an information or indictment containing several counts. According to what is sometimes called the Federal rule (*Dunn v. United States,* 284 U. S. 390, 76 L. Ed. 356, 52 S. Ct. 189, 80 A. L. R. 161, is the leading case), each count is treated as though it were a separate indictment; and a verdict on one count need not be consistent with a verdict on another count of the same indictment, though based upon the same facts. On the

other hand, so far as the state courts are concerned, the weight of authority favors the rule to which this court has subscribed—that a verdict must not be inconsistent (see annotation, 80 A. L. R. 171).

■ What constitutes inconsistency depends upon the particular circumstances. If the crimes charged in separate counts are composed of different elements, a verdict of acquittal on one ordinarily is not inconsistent with a verdict of guilty on another. 23 C. J. S. 1093, § 1403; *State v. Powers*, 152 Wash. 155, 277 Pac. 377; *State v. Baird*, 200 Wash. 227, 93 P. (2d) 409. But where, as in the instant case, two offenses growing out of the same transaction are charged in separate counts of an indictment or information, and one offense includes elements or acts necessary to the commission of the other offense, a verdict of acquittal of the one is inconsistent with a verdict of guilty of the other. 23 C. J. S. 1095, § 1403; *State v. Tuerk*, 165 Wash. 322, 5 P. (2d) 308; *Kuck v. State*, 149 Ga. 191, 99 S. E. 622; *People v. Harrigan*, 218 Mich. 235, 187 N. W. 306; *People v. Andursky*, 75 Cal. App. 16, 241 Pac. 591; *People v. Novo*, 12 Cal. App. (2d) 525, 55 P. (2d) 915 (rehearing denied, 12 Cal. App. (2d) 529, 56 P. (2d) 560).

In *State v. Tuerk, supra*, defendants were charged in three counts with unlawful manufacture of intoxicating liquor for the purpose of sale, barter, or exchange; unlawful possession of intoxicating liquor for the purpose of sale, barter, or exchange; and unlawful possession of an apparatus capable of being used as a still. The only assignment was that the court erred in giving an instruction that, under the evidence, the jury should find the defendants not guilty on all three counts or guilty on all three counts. The jury returned a verdict of guilty on all three counts. This court held that the trial court's instruction was not erroneous, as the evidence was such that an acquittal on any count necessarily would have been inconsistent with convictions on the other counts.

In *People v. Novo, supra*, defendant was charged by an information containing two counts, first, with burglary by entering a dwelling house in the nighttime with intent to

commit rape; and, second, with assault with a deadly weapon with intent to commit rape. The jury found defendant guilty of second-degree burglary on the first count and guilty of simple assault on the second count. The defendant appealed, and the court held that the verdicts on the two counts were inconsistent for the reasons which appear in the following quotation from the opinion:

"The appellant's assertion is irrefutable that the verdict on the second count finding him guilty of an assault is inconsistent with the verdict returned on the first count which found him guilty of burglary in the second degree for the reason that section 460 of the Penal Code specifically classifies burglary accompanied by *an assault on any person* as burglary of the first degree. . . .

"Having found that the defendant was guilty of burglary of the second degree, the necessary inference is that the jury must have assumed he made no assault. This verdict, in effect, constituted an acquittal of the first degree of burglary and the charge of an assault included therein. This determination that there was no actual assault is in irreconcilable conflict with the verdict on the second count to the effect that he was guilty of an assault, for both counts of the information were based on the same transaction which occurred at the same time and place. Since both counts are based on the same transaction and the finding of the jury on the first count refutes the possibility of the commission of the offense by means of an assault, the verdict on the second count is void and should be set aside."

In the present case, the offenses charged in the two counts of the information were based upon the same transaction. There was no evidence of the commission of an assault by appellant upon Spray, except the latter's testimony narrated above. The jury found by its verdict of not guilty on count No. 1 that appellant did not assault Spray, and thus eliminated from count No. 2 such an assault as an essential aggravating incident of the first-degree burglary therein charged. Since, as stated, there is no substantial evidence to support the only other way in which first-degree burglary is alleged in count No. 2, namely, that appellant was armed with a dangerous weapon, the verdict

of guilty of attempted first-degree burglary is not sustained by the evidence.

The judgment is reversed, with instruction to grant appellant a new trial.

Beals, Blake, Robinson, and Jeffers, JJ., concur.

May 4, 1946. Petition for rehearing denied.