[No. 3698-43453-1.    Division One.    March 1, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL WAYNE KIMBALL, *Appellant.*

*Stewart P. Riley*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Douglas B. Whalley, Deputy,* for respondent.

SWANSON, J.—Michael Wayne Kimball appeals from the judgment and sentence imposed upon his conviction of first-degree murder. He contends that this court should direct the lower court to enter a "not guilty" verdict or, in the alternative, reverse the conviction and order a new trial. We decline to grant any relief and affirm the judgment and sentence.

The State's direct evidence of the murder of June Yonekawa on the streets of downtown Seattle at about 11:15 p.m. on the night of May 27, 1974, consisted primarily of the eyewitness testimony of Charles Kiyonaga, who viewed the attack from his automobile as he drove slowly in a southerly direction on Fifth Avenue while the death scene was unfolding. He described watching a woman being closely followed by two men. They approached within 4 or 5 feet of their victim when one of the men, later identified as the fellow wearing a plaid jacket, grabbed and pulled her down and started striking her. The assailant's companion, clothed in a brown jacket, stood by not more than a foot and a half away. The victim was on the ground squirming and twisting to avoid the blows. Kiyonaga pulled alongside and asked them what they were doing. The men did not respond but walked rapidly away. The woman then got up, staggered into the street, and fell down screaming. Kiyonaga followed the men and repeatedly asked them, "Stop." He then turned east on Pike Street and drove into an alley, blocking their path. He drew his revolver and held the man wearing the plaid jacket, who was later determined to be Herd. When asked what happened next, he said,

A  I see one fellow hand somebody, I mean, the other fellow something, he ducked down behind my car, shot up on the other side and headed up east on Pike Street.
Q  Which one handed something?
A  It would be the fellow in the plaid coat.
Q  And who took it?

A  The other fellow.

. . .

Q  And then what did the man in the brown coat do?
A  He ducked down low in front of the car, hopped up on the other side and took off running.
Q  What did you do?
A  I stayed and held this other fellow.

Herd was taken into custody by the police who had arrived on the scene. Defendant Kimball escaped apprehension that evening, but was subsequently arrested and charged with first-degree murder for aiding and abetting Herd in the stabbing death of June Yonekawa. Herd and Kimball both pleaded not guilty and were tried jointly. Both defendants were found guilty of murder in the first degree. However, the special verdicts found only Herd, and not Kimball, armed with a deadly weapon.

Kimball first contends that the trial court erred in denying his motion for new trial because the special verdict that Kimball was not armed with a deadly weapon is inconsistent with the general verdict of guilty. Reversal is required, Kimball argues, because instruction No. 20 states that "[o]ne who, without possession of a deadly weapon, aids and abets another who possesses a deadly weapon in the commission of a crime, is equally guilty with the principal of possessing a deadly weapon," and a general verdict of "guilty" as to both Kimball and Herd required the jury to find Kimball also guilty of possessing a deadly weapon. He contends the failure to do this creates an inconsistency between the general verdict and the special finding, and thus the special finding, or verdict, is controlling. In support of this argument appellant cites RCW 4.44.440, which states, "When a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly."

While appellant's argument, without further analysis, appears logical and to that extent persuasive, it is nonetheless erroneous. In *Spokane & I.E.R.R. v. Campbell*, 241 U.S. 497, 502, 60 L. Ed. 1125, 36 S. Ct. 683 (1916), the

954

United States Supreme Court examined the pertinent Washington cases and concluded that

> [t]he rule established by decisions of the Supreme Court of the State is that where the general verdict and the special findings can be harmonized by taking into consideration the entire record of the cause including the evidence and the instructions to the jury, and construing it liberally for that purpose, it is the duty of the court to harmonize them, and that where a special finding is susceptible of two constructions, one of which will support the general verdict and the other will not, that construction shall be adopted which will support the general verdict.

That this is still the law of Washington was reaffirmed by the Washington Supreme Court in *State v. Robinson*, 84 Wn.2d 42, 45-46, 523 P.2d 1192 (1974):

> [W]here a special verdict is susceptible of two constructions, one of which will support the general verdict and the other of which will not, we will give such construction as will support the general verdict. . . . It is clear that a "special finding of fact" will not be deemed to control a general verdict unless it is so irreconcilably inconsistent that it cannot be otherwise interpreted. . . . Since there are two reasonable interpretations, we must accept the one consistent with the general verdict of guilty.

(Citations omitted.) The jury was free to find that Kimball did not strike the death blows, but aided and abetted Herd in so doing, and did not literally have a deadly weapon in his possession. This is consistent with the charge in the information and the evidence, even though there is evidence that Kimball admitted he did the actual stabbing.

▇ Instruction No. 20 did not bind the jury, *cf. Spokane & I.E.R.R. v. Campbell, supra* at 504-05, but presented a theory under which it could find that Kimball "possessed" a deadly weapon. Instruction No. 20 required a conclusion based upon the law expressed in the instruction, which is contrary to a literal fact which the jury could have believed—that Kimball, in fact, did not have a deadly weapon in his possession when the killing took place. The

jury was asked, in effect, to make a finding of possession in law, or constructive possession, a legal fiction, as opposed to possession in fact. The special verdict is thus "an expression of the opinion of the jury upon a legal proposition, . . . and should not be allowed to control the fact found by the general verdict and be held as vitiating it." *Silsby v. Frost*, 3 Wash. Terr. 388, 391, 17 P. 887 (1888); *Skoog v. Columbia Canal Co.*, 63 Wash. 115, 125, 114 P. 1034 (1911). It should be further noted that the court explained the jury's responsibility, in the event it found Kimball guilty, by stating in instruction No. 30,

> In the event you find a defendant guilty of either the offense charged or the lesser included offense, it will be necessary for you to return a special verdict as follows with respect to such offense and as reflected on the special verdict form. "Was the defendant armed with a deadly weapon at the time of the commission of this offense?"

The jury apparently gave this instruction a literal interpretation and found, on the basis of testimony, that Herd wielded the murder weapon and did not give it to Kimball until Kiyonaga blocked their escape with his automobile and held them at bay with his pistol, that Kimball was not in actual fact armed with a deadly weapon at the time of the commission of the offense.

In addition, the special finding as to whether a defendant was armed with a deadly weapon adds nothing to the elements of first-degree murder and is not a special finding of fact related to the offense charged, as are special interrogatories. It has no relevancy to Kimball's guilt of the crime for which he has been convicted, but only to punishment. We therefore do not regard the jury's negative finding of possession of a deadly weapon as inconsistent with the general verdict. *Byrne v. Funk*, 38 Wash. 506, 514, 80 P. 772 (1905).

Kimball next contends that the trial court erred in refusing to suppress the in-court identification of appellant by Charles Kiyonaga. Three days after the homicide, Kimball's

attorney attended a police lineup in which Kimball was in position No. 3. Kiyonaga could not make a positive identification at the lineup, but indicated that possibly it was No. 6 who got away. Kiyonaga met with the police immediately after the lineup and on two or three subsequent occasions, and then, 7 weeks after the lineup took place, he advised the prosecuting attorney that upon further reflection he believed that the person in the lineup designated No. 3 (Kimball) was the individual who left the scene of the homicide. Kimball's counsel was not present at any of these post-lineup meetings between Kiyonaga and law enforcement authorities.

Kimball points to statements in *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967), to support his argument that counsel must be present not only during the time of the lineup itself, but when the witness makes his identification. He contends that the portion of the proceeding his lawyer was not permitted to observe—the actual identification—is the most important part of the procedure. Appellant relies upon *People v. Williams*, 3 Cal. 3d 853, 478 P.2d 942, 92 Cal. Rptr. 6 (1971), where the California court stated at page 857,

> [T]he exclusion of counsel from the moment of actual identification frustrated the second purpose of *Wade* and *Gilbert* [*v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967)], namely, to safeguard against the inherent risks of suggestion which are present at that time.

We disagree. *State v. Favro*, 5 Wn. App. 311, 487 P.2d 261, *review denied*, 80 Wn.2d 1001 (1971), *cert. denied*, 405 U.S. 1040, 31 L. Ed. 2d 580, 92 S. Ct. 1309 (1972), rejected the reasoning of the *Williams* majority and is dispositive of the question. *Wade* was concerned with pretrial confrontations of the accused and the ability of defense counsel at trial meaningfully to cross-examine witnesses against the defendant. In the instant case, the reconsideration by the witness of his identification does not entail a *Wade* confrontation requiring the presence of defense counsel; the confrontation here occurred at the lineup, and counsel was

then present. If Kimball's theory were to be literally followed, it would be necessary for Kiyonaga to be accompanied by defense counsel between the time of the lineup and the trial, or at least until the time of his reconsideration of his prior tentative identification. A thorough and careful inquiry into Kiyonaga's post-lineup identification was conducted by the trial judge, and the evidence presented fully supports the trial court's conclusion that this post-lineup identification was made without suggestion, collusion or pressure by the police. There is therefore no basis for suppressing such identification. We made it clear in *State v. Gosby*, 11 Wn. App. 844, 526 P.2d 70 (1974), *aff'd*, 85 Wn.2d 758, 539 P.2d 680 (1975), that witness credibility is a question for the jury tested by cross-examination and subject to fair comment in final argument.

Kimball also urges that the trial court erred in refusing to grant his motion to amend the information to second-degree murder on the basis that the State did not prove a prima facie case of murder in the first degree. Kimball contends that he was charged with first-degree murder under RCW 9.48.030(1) and (3); that is, with a premeditated design to effect the death of the person killed or, in the alternative, while engaged in the commission of, or an attempt to commit, or in withdrawing from the scene of, a robbery. He claims the record does not disclose sufficient evidence of premeditation or attempted robbery, and even if there was evidence of attempted robbery, the homicide did not occur during or while withdrawing from the robbery. Kimball relies upon the rule that it is error to allow a jury to deliberate when an information charges in one or more alternative ways and the evidence is insufficient to support one of the alternatives. Again, we disagree. The facts follow closely those in *State v. Evans*, 145 Wash. 4, 258 P. 845 (1927), and indicate substantial evidence of premeditation. As to the alternative ground, even though a homicide must be connected to the commission of a felony to invoke the felony murder rule, the mere fact that the homicide occurred first does not separate the two acts.

*State v. White*, 60 Wn.2d 551, 374 P.2d 942 (1962), *cert. denied*, 375 U.S. 883, 11 L. Ed. 2d 113, 84 S. Ct. 154 (1963); *see State v. Golladay*, 78 Wn.2d 121, 470 P.2d 191 (1970).

■ Kimball contends that witness Paul Earney should have been prohibited from testifying about admissions made by Kimball. Some of the most damaging testimony against Kimball was presented by Earney, who stated Kimball told him that he walked downtown with another person that night "to make some money," and that he passed off his knife to this other person and that they walked up behind a woman whom the other person stabbed three times. Over objection, Earney also testified that on another occasion Kimball told him that he and another person had left a party at 10 p.m., gone downtown and walked up behind a woman, and

> that the other person said let's get away from this, and that the other person walked away briefly, shortly, and that Michael [Kimball] himself made a pass at her throat with his knife and missed, and caught the face, and that he stuck her three times with the knife.
> Q Did he say why he stabbed her, or why they went up behind her, he went up behind her?
> A He said he just did it to be one of the boys.

Kimball's argument that the court committed error in denying his motion to suppress Earney's testimony is premised on the theory that because Kimball was charged with aiding and abetting, the evidence that he was a principal was inadmissible. However, RCW 9.01.030 permits Kimball to be charged as a principal and punished as such. Therefore, evidence that he was a principal rather than an aider or abettor is admissible.

■ Kimball's fourth assignment of error, which challenges the sufficiency of the proof that Kimball aided and abetted Herd in committing the crime, is not supported by argument and need not be considered; however, we have carefully reviewed the record and find ample evidence of aiding and abetting.

Judgment affirmed.

JAMES and ANDERSEN, JJ., concur.