54 P.3d 723 (2002)
STATE of Washington, Respondent,
v.
Matthew Glen GOINS, Appellant.
No. 48437-1-I.
Court of Appeals of Washington, Division 1.
September 30, 2002.
*724 Ian M. Goodhew, King County Prosecutor's Office, Seattle, WA, for Respondent.
Eric J. Nielsen, Nielsen, Broman & Koch, Seattle, WA, for Appellant.
KENNEDY, J.
Matthew Glen Goins was charged with a single count of second degree assault with intent to commit indecent liberties. The State also charged that the crime was committed with sexual motivation. By way of general verdict, a jury found Goins guilty of second degree assault as charged. However, in the special verdict, the jury declined to find that Goins committed the offense with sexual motivation. Goins argues that these irreconcilably inconsistent verdicts compel reversal and acquittal, and that if the issue was not preserved for this appeal, his trial counsel was ineffective for failing to raise it before the jury was discharged. The State contends that Goins waived his right to appeal the inconsistent verdicts by failing to object below, that Goins has failed to demonstrate actual prejudice because substantial evidence supports the conviction, and that Goins's trial counsel likely had a strategic reason for failing to object. We agree with the State and affirm the conviction.

FACTS
Matthew Goins and his friend Steve Haworth went out drinking on the evening of May 17, 2000. In the early morning hours of May 18, Haworth asked Goins if he would give him a ride to the apartment of a friend, Angela Z. Z was at home and awake with her young son and boyfriend when Goins and Haworth arrived at approximately 4 a.m. Z testified that Haworth was drunk and that Goins had been drinking. Z's boyfriend left to go to work. Goins and Haworth also left for a period of time, and then returned.
Haworth went into Z's bathroom and became sick, leaving Goins and Z alone in the living room. Goins started asking Z questions about her boyfriend. Z testified that Goins stood up, walked over to her, and tried to kiss her. She said that she pushed him away, and he sat back down and did not talk to her for a little while. Z sat in silence watching television and waiting for Haworth to get out of the bathroom. Eventually she fell asleep. Z testified that when she woke up, she found Goins in her bedroom, urinating on her bed.
Shocked by Goins's behavior, Z asked, "What are you doing?" and pounded on the bathroom door in an attempt to rouse Haworth. Z said that Goins tried again to kiss her. Z again pushed him, but this time he did not move away. She ran to the front door in an attempt to get out of the apartment, but Goins forced the door shut and asked Z, "Do I make you nervous?" Z tried again to wake up Haworth, but Goins grabbed her by her arms and forced her into the bedroom. Z was scared and screamed for Haworth.
Z said that Goins shut the bedroom door with his foot and forced her down onto the bed. She said that she tried to fight off *725 Goins by turning and kicking him, but Goins pinned down her arms and legs and tried to lift up her T-shirt. Z fought back by pulling her shirt back down and wrestling with Goins's hands. She testified that Goins tried to touch her upper thighs, but she continued to fight him off, at one point punching him in the face. Z pleaded with Goins to stop, telling him that she was pregnant, but to no avail. Z screamed for Haworth to wake up.
Z said that Goins suddenly jumped off of her, as Haworth struggled to enter the bedroom. Goins tried to block Haworth from entering by holding the door shut. Haworth forced his way into the bedroom, and Goins ran out into the living room. Haworth yelled, "What is going on!" and Z responded that Goins had tried to rape her.
As Goins tried to gather up his belongings, Z walked out the front door of her apartment and started banging on her neighbor's door in order to call the police. Goins then ran out of the apartment and drove away in his car. Z's neighbor, Shari Platt, answered the door and allowed Z to call the police. Z said that she had marks on her wrist, neck, foot and face from the struggle. At trial, Platt confirmed that Z had appeared at her door on the morning of May 18, crying and upset. She said that Z told her that she had almost been raped, and asked if she could use the phone to call the police.
Haworth's testimony at trial was consistent with Z's. He said that he passed out in the bathroom and woke to the sound of Z's screams. He said that Goins tried to block him from entering the bedroom. When he managed to get in, he found Z sobbing uncontrollably and looking "roughed up." Haworth said that eventually Z calmed down enough to tell him that Goins had tried to rape her.
Goins testified in his own defense at trial. He admitted that he tried to kiss Z while Haworth was in the bathroom, and that she rebuffed his advances. He testified that he followed Z into the bedroom and tried again to kiss her. He said that he might have touched Z's shoulder. Goins testified that after his second attempt, Z "flipped out" and punched him in the face. Goins claimed that he had to grab Z to keep her from hitting him, and that the bathroom door was accidentally shut during the struggle. Goins admitted that he pushed Z onto the bed, but said that it was an accident. He denied that he had urinated on Z's bed. Goins said that he told Haworth that Z was "tripping" and then left the apartment.
Goins was charged under RCW 9A.36.021(e) with second degree assault with intent to commit the felony of indecent liberties. The State also charged that the crime was committed with sexual motivation, under RCW 9.94A.127.[1] The "to-convict" instruction provided that the State had to prove the following elements:
(1) That on or about the 18th day of May, 2000, the defendant assaulted Angela [Z];
(2) That the assault was committed with intent to commit Indecent Liberties; and
(3) That the acts occurred in the State of Washington.
Clerk's Papers at 16.
The jury also was instructed that "[a] person commits the crime of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another by forcible compulsion." Id. at 19. "Sexual contact" was defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party." Id. at 20.
The jury was also given a special verdict form, which asked: "At the time the defendant committed the crime of Assault in the Second Degree, did the defendant commit the crime with sexual motivation?" Id. at 34.
The jury was instructed that "[s]exual motivation means that one of the purposes for which the defendant committed the crime *726 was for the purpose of his or her sexual gratification." Id. at 22.
During deliberations, the jury made several inquiries regarding unanimity. The first inquiry read:
(1) We are unable to agree unanimously on a conviction for Second Degree Assault (11-1 to convict). Most of the 11 are unwilling to drop to a fourth degree conviction. Are we hung?
(2) The single holdout against the Second Degree Conviction cannot make a determination from the evidence given. If he consents, can he be excused and the alternate be called?
Id. at 31. The trial court's response is not in the record. However, the jury continued to deliberate. The second inquiry, sent a little over an hour later, read: "(1) On the Special Verdict Formmust our answer be unanimous for "NO," or is the answer automatically "NO" if we are not unanimous on a yes answer? (2) What is the reason for the Special Verdict Form?" Id. at 33. The trial court judge responded by telling the jury to reread the instructions and to continue deliberating.
The jury eventually returned a verdict of guilty on the second degree assault charge and answered "no" on the sexual motivation special verdict. Defense counsel made no motion regarding the inconsistent verdicts. Goins was sentenced, and now appeals.

STANDARD OF REVIEW
An appellate court may refuse to review any claim of error that was not raised in the trial court. RAP 2.5(a); State v. Scott, 110 Wash.2d 682, 686, 757 P.2d 492 (1988). However, a claim may be raised for the first time on appeal if it amounts to a manifest error affecting a constitutional right. Id.

DISCUSSION
The jury found by general verdict that Goins committed assault with intent to commit indecent liberties. To find that the assault occurred with the intent to commit indecent liberties, the jury was required to find that Goins intended to touch "the sexual or other intimate parts of a person" for the purpose of "gratifying sexual desire of either party." Clerk's Papers at 20. However, in the special verdict, the jury found that Goins did not commit the assault for the purpose of sexual gratification. Logically, both verdicts turn on the jury's factual determination of whether Goins assaulted Z for the purpose of sexual gratification. The verdicts are irreconcilably inconsistent because Goins either committed the assault for the purpose of sexual gratification or he did not. Both verdicts cannot be true. We must determine whether Goins waived the right to challenge the inconsistent verdicts by failing to object below. This, in turn, requires a determination of whether the inconsistent verdicts are automatically void, in which event the remedy is a new trial on both charges, or whether the general verdict should be upheld if there is sufficient evidence to support it. Goins also argues that RCW 4.44.440 is applicable to inconsistent verdicts in criminal trials. Under that statute, the special verdict controls the general verdict and the court shall enter judgment accordingly. If the statute applies in criminal cases, the remedy is acquittal, rather than a new trial. And if Goins failed to preserve the issue for appeal by failing to raise a timely objection, we must consider whether his trial counsel rendered ineffective assistance.
"Inconsistent verdicts ... present a situation where `error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred[.]" United States v. Powell, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Juries reach inconsistent verdicts in a variety of ways. The first is mistake or confusion. The jury may misunderstand the court's instructions or erroneously apply the law to the facts of the case. The second is compromise. This may occur where a deadlocked jury negotiates some mix of acquittals and convictions. The third is lenity, also known as jury nullification. In this situation, the jury may acquit a defendant on one count while convicting on another count, based on its belief that the applicable law would result in an unjust punishment. ERIC L. MULLER, THE HOBGOBLIN OF LITTLE MINDS? OUR FOOLISH LAW OF INCONSISTENT *727 VERDICTS, 111 HARV. L. REV. 772, 782-85 (1998). Regardless of the underlying reason, inconsistent verdicts are "unlawful" in the sense that the inconsistency would not have arisen if the jury had followed the court's instructions.
Inconsistent verdicts involving a single defendant may arise in a variety of contexts, one of which is an inconsistency between a guilty verdict on one charge and an acquittal on another charge. This typically occurs where the defendant is simultaneously charged with two offenses stemming from the same set of facts, and one offense includes elements or acts necessary to the commission of the other offense.[2] 23 C.J.S. CRIMINAL law, 1095, § 1403. In this situation, the guilty verdict will be upheld despite the inconsistency, if it is supported by substantial evidence. State v. Ng, 110 Wash.2d 32, 750 P.2d 632 (1988) (jury's verdicts finding defendant not guilty of first degree felony murder but guilty of predicate crime of first degree robbery inconsistent in that it was undisputed that killings occurred during course of robbery; guilty verdicts upheld despite inconsistency because they were supported by substantial evidence).
In State v. McNeal, 145 Wash.2d 352, 37 P.3d 280 (2002) the Washington Supreme Court held that the Ng rule applies in a second context as well, that is, where there is an inconsistency between a special finding of fact supporting a guilty verdict on one charge, and a guilty verdict on another charge. In McNeal, the defendant crossed the centerline of the roadway and crashed headlong into another car, seriously injuring the driver and killing a passenger in the other car. He was charged with vehicular homicide and vehicular assault. The jury's guilty verdict on the vehicular assault charge implied that McNeal was driving while under the influence of methamphetamine. But in finding that McNeal was also guilty of vehicular homicide, the jury made special findings that he drove recklessly but was not operating the vehicle while under the influence of drugseven though the evidence at trial established that he had significant methamphetamine in his blood. The inconsistent verdicts were not challenged before the jury was discharged. Because both guilty verdicts were supported by substantial evidence, the Supreme Court rejected McNeal's contention that the verdicts were void; thus, there was no "manifest" constitutional error and the issue could not be raised for the first time on appeal. McNeal, 145 Wash.2d at 361-62, 37 P.3d 280.
We deal here with a third context in which inconsistent jury verdicts can arise, that is, where there is an inconsistency between a guilty verdict on one charge, and a special finding of fact on the same charge. Such a verdict is "internally inconsistent," which arguably makes it analytically distinct from an inconsistency between two separate charges against the defendant. Until quite recently, it appeared to be settled law in Washington that, where the jury returns a general verdict of guilt accompanied by an irreconcilably inconsistent special interrogatory on the same charge, the remedy is to declare the inconsistent verdicts void and remand for a new trial. See, e.g., State v. Wedner, 24 Wash.App. 346, 601 P.2d 950 (1979) (in order to convict defendant of second degree assault, jury had to find that he committed the act while armed with a Colt Mark IV 45 caliber pistol; jury found defendant guilty of second degree assault, but by special verdict found that he was not in possession of or armed with a firearm when the crime was committed; remedy was reversal and remand for a new trial); State v. Hurley, 4 Wash.App. 781, 483 P.2d 1274 (1971) (jury found defendant guilty of first degree robbery, which required a finding that he was *728 armed with a deadly weapon; but jury found by special verdict that defendant was not armed with a deadly weapon; remedy was reversal and remand for a new trial). A spate of recent cases, including Ng and McNeal, calls this rule into doubt.
These recent cases adopt the reasoning of the United States Supreme Court in two seminal cases. In Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161 (1932), the Court upheld a jury's guilty verdict on one count even though the verdict was inconsistent with the jury's acquittal on another count. The Court refused to engage in speculation as to whether the inconsistent verdict stemmed from jury mistake, compromise, or lenity. Id. at 393-94, 52 S.Ct. 189. The Court reaffirmed Dunn more than a half-century later in United States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461. Like Dunn, Powell involved inconsistent acquittals and convictions. The Court upheld the defendant's conviction on a charge of using a telephone to facilitate the commission of certain felonies, even though the jury had acquitted her of committing the underlying felonies. Id. at 69, 105 S.Ct. 471. The Court noted that Dunn established "`the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons.'" Id. at 63, 105 S.Ct. 471, quoting Harris v. Rivera, 454 U.S. 339, 346, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981). The Court refused to conduct "an individualized assessment of the reason for the inconsistency" because it "would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." Powell, 469 U.S. at 66, 105 S.Ct. 471.
The Washington Supreme Court initially rejected the Dunn rule. In State v. O'Neil, 24 Wash.2d 802, 808-09, 167 P.2d 471 (1946), overruled by State v. Ng, 110 Wash.2d 32, 750 P.2d 632 (1988), the court adopted what was then the majority rule among the states: Where a jury's guilty verdict on one count is inconsistent with its acquittal on another count, the conviction is void and the defendant is entitled to a new trial. Id. at 808-09, 167 P.2d 471. However, since O'Neil was decided, a majority of state courts changed course and now follow Dunn. See Annotation, Inconsistency of criminal verdict as between different counts of indictment or information, 18 A.L.R.3d 259, § 3, at 274 (1968).
Forty-two years after O'Neil, the Washington Supreme Court revisited the issue in State v. Ng, 110 Wash.2d 32, 750 P.2d 632. In Ng, the defendant sought reversal of his robbery convictions on the basis that they were inconsistent with the jury's acquittal on felony murder charges. Id. at 47, 750 P.2d 632. The court agreed that the verdicts were inconsistent: because the defendant did not dispute that the killings occurred in the course of the robberies, the jury should have found him guilty of the felony murder charges if it found him guilty of the underlying robbery charges. Nevertheless, the court concluded that "considerations of jury lenity, and problems inherent in second-guessing the jury's reasoning as to an acquittal dictate our application of the Dunn rule to this case." Id. at 48, 750 P.2d 632. Accordingly, the court overruled O'Neil and held that "[w]here the jury's verdict is supported by sufficient evidence from which it could rationally find the defendant guilty beyond a reasonable doubt, we will not reverse on grounds that the guilty verdict is inconsistent with an acquittal on another count." Id. at 48, 750 P.2d 632. See also State v. McNeal, 145 Wash.2d at 359 n. 3, 37 P.3d 280 ("[J]ury lenity holds an important role even where the jury convicts on all counts. Indeed, if the jury had made a special finding on the vehicular homicide charge that McNeal was under the influence of drugs, the finding would have increased the seriousness level of that offense ... and resulted in a corresponding increase in McNeal's standard sentence range").
In State v. Barnes, 85 Wash.App. 638, 668, 932 P.2d 669 (1997), Division Two of this court refused to review the defendant's claim that the jury's special verdicts were inconsistent with its general verdict, holding that the defendant waived his right to object on appeal by failing to raise the issue before the trial court discharged the jury. The court cited a civil case for this proposition, Gjerde v. Fritzsche, 55 Wash.App. 387, 393, 777 P.2d *729 1072 (1989).[3] The Barnes court did not discuss whether a different rule should be applied in criminal cases. Neither did it mention the Wedner/Hurley line of cases, which would appear to be contradictory.
The issue was raised again in State v. Burke, 90 Wash.App. 378, 952 P.2d 619 (1998). In Burke, the defendant argued to Division One that the jury's special verdict that he was not armed during the burglary was irreconcilably inconsistent with its general verdict finding him guilty of first degree burglary. Id. at 385-86, 952 P.2d 619. The State argued that Burke waived his right to appeal the issue by failing to object before the trial court discharged the jury. Although we ultimately declined to reach the waiver issue because the verdicts were not irreconcilably inconsistent, we observed in a footnote that the Barnes court had relied on a civil case without analyzing its applicability to criminal cases. Burke, 90 Wash.App. at 386 n. 2, 952 P.2d 619. We also cited Wedner and stated that "[w]here the special verdict cannot be reconciled with the general verdict, the judgment is void." Id. at 386, 952 P.2d 619.
In State v. Holmes, 106 Wash.App. 775, 24 P.3d 1118 (2001), the jury returned a general verdict of guilt on a charge of first degree robbery premised on the defendant being armed with a deadly weapon, but in a special verdict acquitted him on the deadly weapon enhancement. Id. at 778-79, 24 P.3d 1118. The court held that the verdicts were not irreconcilably inconsistent when viewed in conjunction with the jury instructions. Id. at 780, 24 P.3d 1118. The court went on to state, however, that "even assuming an inconsistency, we need not reverse because sufficient evidence supports Holmes's first degree robbery conviction." Id. at 782, 24 P.3d 1118, citing Ng, 110 Wash.2d at 48, 750 P.2d 632. In a footnote, the court acknowledged the contrary Hurley/Wedner rule, but suggested that those cases had been implicitly overruled by Ng: "While Hurley has similar facts to the case at bar, it and Wedner were decided when inconsistent verdicts constituted reversible error. See, e.g. State v. O'Neil, 24 Wash.2d 802, 809, 167 P.2d 471 (1946), overruled by Ng, 110 Wash.2d at 48, 750 P.2d 632." Id. at 781, n. 2, 24 P.3d 1118.
Goins urges us to adhere to the Hurley/Wedner rule under which inconsistent verdicts are treated as no verdicts at all, so that the defendant is entitled to a new trial. But he also argues that RCW 4.44.440 mandates that the special finding that he did not commit assault with sexual motivation controls the general verdict that he assaulted Z with intent to commit indecent liberties, entitling him to acquittal rather than simply a new trial. Goins further argues that McNeal does not apply to internally inconsistent verdicts such as the one in this case.
In response to the statutory argument, the State contends that RCW 4.44.440 does not apply to criminal cases, and we will address that issue first. RCW 4.44.440 states: "When a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly." On its face, this statute would appear to conclusively end the argument in Goins's favor. The special finding of fact states that Goins did not commit the crime for the purpose of sexual gratification. If this finding controls as a matter of law, then the State must be presumed to have failed to prove that Goins committed the assault with the intent to commit indecent liberties, notwithstanding the jury's general verdict to the contrary. If the conviction is void, and especially if Goins is entitled to an acquittal on the assault charge rather than simply a new trial, he has established *730 actual prejudice regardless of whether sufficient evidence supports the conviction.
RCW 4.44.440 appears in Title 4, entitled "Civil Procedure." No cases have explicitly analyzed whether it is appropriate to apply this statute to criminal cases.[4] In State v. Robinson, 84 Wash.2d 42, 45, 523 P.2d 1192 (1974) the jury found the defendant, a Seattle police officer, guilty of asking for and receiving bribes. But their verdict was accompanied by a note to the judge stating that in finding the defendant guilty the jury believed that he was only guilty of accepting drinks while in uniform, thus neglecting and violating his official duty. The defendant later argued before the Supreme Court that the jury's note was a special verdict impeaching the general verdict and entitling him to acquittal under RCW 4.44.440. The Court responded to this argument as follows:
Defendant assumes too much. Denominating the jury's note a `special verdict' or `special finding' does not make it one. Quite the contrary, the cases that have dealt with RCW 4.44.440 make it quite clear that `special verdicts' and `special findings of fact' in support thereof stem from special interrogatories submitted to juries by the court. They are not volunteered by juries at will and presented to the court. In fact juries are not authorized to make `special findings' on their own initiative. Thus, the rule cited by defendant is not applicable because the jury's note is not a `special verdict' or a `special finding' within the meaning of the statute. See also CR 49.
Robinson, 84 Wash.2d at 45, 523 P.2d 1192 (citation omitted). The Court reasoned further that even if the jury's note amounted to a special verdict, it was subject to two reasonable interpretations, one of which was that it was simply a request for leniency as the jury had indicated to the judge before the verdict was delivered. "It is clear that a `special finding of fact' will not be deemed to control a general verdict unless it is so irreconcilably inconsistent that it cannot be otherwise interpreted. Since there are two reasonable interpretations, we must accept the one consistent with the general verdict of guilty." Id. (citation omitted). The court ultimately decided the appeal on a different ground altogetherthat the trial court should not have permitted the jury to recommend leniency without also advising the jury that the court was not bound by any such recommendation and that the jury should decide the case without considering the matter of punishment. The defendant was given a new trial on that ground. Id. at 46, 523 P.2d 1192.
We thus respectfully disagree with the position in the dissenting opinion in McNeal that State v. Robinson stands for the proposition that RCW 4.44.440 applies in criminal proceedings. McNeal, 145 Wash.2d at 369, 37 P.3d 280 (Sanders, J. dissenting). The Robinson court did not decide that question, in that the jury's note in that case did not amount to a "special verdict."
Similarly, in State v. Kimball, 14 Wash. App. 951, 546 P.2d 1217 (1976) the court did not decide whether RCW 4.44.440 applies in criminal proceedings. There, the jury convicted Kimball of first degree murder for stabbing a woman to death with a knife. The jury found by special verdict that only the co-defendant, and not Kimball, was armed with a deadly weapon, notwithstanding an instruction that one who without possession of a deadly weapon aids and abets another who possesses a deadly weapon in the commission of a crime is equally guilty with the principal of possessing a deadly weapon. Under this instruction, since the jury found Kimball guilty of first degree murder, it logically should have found that he committed the crime while armed with a deadly weapon, even if it believed that only the co-defendant was so armed. This being so, Kimball argued *731 that he was entitled to acquittal under RCW 4.44.440. This court replied: "While appellant's argument, without further analysis, appears logical and to that extent persuasive, it is nonetheless erroneous." Kimball, 14 Wash.App. at 953, 546 P.2d 1217. Because the special verdict was susceptible of two constructions, one of which supported the general verdict (notwithstanding the instruction, the jury could have believed that the co-defendant did the actual stabbing and that Kimball aided and abetted the principal but was not himself armed with the knife) the special verdict was not irreconcilably in conflict with the general verdict. Id. at 954, 546 P.2d 1217.[5]
Although neither the Robinson nor the Kimball court held that RCW 4.44.440 applies in criminal cases, neither court rejected the notion out of hand. We observe, however, that the traditional rule under O'Neil and its progeny did not require entry of judgment in accordance with the special verdict that is, entry of judgment of acquittal. Instead, both the general and special verdicts were rendered nullities by the conflict. See Hurley, 4 Wash.App. at 783-84, 483 P.2d 1274 (rejecting argument that defendant was entitled to judgment n.o.v.; holding instead that the posture was the same as if the jury had returned no verdict at all and a mistrial had been declared); Wedner, 24 Wash.App. at 348, 601 P.2d 950 (inconsistent verdicts void and a new trial must be granted).
Further doubt that RCW 4.44.440 applies in criminal cases is raised by CrR 6.16(b), adopted by our Supreme Court in 1973. The rule expressly addresses the issue of inconsistent verdicts in criminal proceedings:
The court may submit to the jury forms for such special findings which may be required or authorized by law. The court shall give such instructions as may be necessary to enable the jury both to make these special findings or verdicts and to render a general verdict. When a special finding is inconsistent with another special finding or with the general verdict, the court may order the jury to retire for further consideration.
Unlike the rigid approach of RCW 4.44.440, CrR 6.16(b) does not require the trial court to enter a judgment in favor of a special verdict over a general verdict. Rather the court "may" order the jury to deliberate further. That the court "may" so exercise its discretion implies that it need not do so, especially if not asked to do so by one of the parties.[6]
*732 CrR 1.1 states that the criminal rules "supersede all procedural statutes and rules that may be in conflict and shall be interpreted and supplemented in light of the common law and decisional law of this state." Because Goins has not cited any criminal cases in which RCW 4.44.440 has been applied, and we have found none, we cannot "harmonize" CrR 6.16(b) with any such cases. Any "harmonizing" that is to be done must take into account the traditional Wedner/Hurley approach to inconsistent verdicts, to the extent that those cases may retain viability after Ng and McNeal, and not RCW 4.44.440. We conclude that RCW 4.44.440 does not apply to inconsistent verdicts in criminal cases.
The State urges this court to extend the rule of Ng and McNeal to an inconsistency between a general and a special verdict on the same count. The State points to the McNeal court's reliance on State v. Peerson, 62 Wash.App. 755, 816 P.2d 43 (1991) in support of its contention that inconsistent verdicts must stand where there is evidence sufficient to uphold the conviction, regardless of the type of inconsistency at issue. In Peerson, this court reconciled internally inconsistent special verdicts with general verdicts of guilt on two counts of aggravated first degree murder. In Peerson, the State charged the defendant with aggravated first degree murder for killing two people as part of a common scheme or plan. After finding the defendant guilty of two counts of first degree murder, the jury was required to answer interrogatories to determine whether there were aggravating factors. With respect to the first count, the jury answered no to the question of whether there was more than one murder victim and the murders were part of a common scheme or plan of the defendant (although the jury answered yes to another aggravating factor with respect to that count); with respect to the second count, the jury answered yes to that same question. The defendant argued on appeal that the trial court should have vacated the conviction on the second count when it realized that the jury had not found that he murdered both victims as part of a common scheme or plan, but only one of them, it being plain that the common scheme or plan aggravating circumstance requires that the common scheme or plan result in more than one death. This court affirmed the conviction on two bases: first, the conflicting verdicts could be reconciled because the jury may have read the court's instructions so literally as to believe that there could not be more than one death as the result of a common scheme or plan until both victims were dead, not just the first such victim; and second (citing Ng), the jury's verdict that the victim on the second count was murdered as part of a common scheme or plan of the defendant to murder both victims was supported by substantial evidence. Peerson, 62 Wash.App. at 765-66, 816 P.2d 43. See McNeal, 145 Wash.2d at 359, 37 P.3d 280 (citing Peerson as precedent for the proposition that the Ng ruling applies where there is an inconsistency between a special finding and a general verdict as well as an inconsistency between two general verdicts as was the case in Ng).
The traditional rule was based on an underlying concern that even though the jury by entering a general verdict of guilt indicates that the State has proved its case beyond a reasonable doubt, an inconsistent special verdict casts doubt on that proposition because both findings cannot be true: a defendant logically cannot both be armed with a deadly weapon and not armed with a deadly weapon while committing the same robbery. E.g., Hurley. In the instant appeal, we agree with Goins that he logically cannot both have assaulted Z for the purpose of sexual gratification and not had a sexual motivation for committing that same assault. But it is equally true that a defendant logically cannot have driven his vehicle head-on into an oncoming vehicle, maiming the other driver and killing a passenger, both while under the influence of drugs for purposes of the driver and not under the influence of drugs for purposes of the passengersuch a defendant is either under the influence of drugs when he causes the collision, or he is not. E.g., McNeal. And a participant in an armed robbery, during the course of which he or another participant in the robbery kills 13 victims of the robbery, logically cannot both be guilty of the armed robbery and not guilty of the resulting felony-murders. E.g., Ng. From the point of view of logic, to distinguish *733 the inconsistencies between the verdicts in Ng, McNeal, and Peerson from the inconsistency between the verdicts in this appeal would be to elevate form over substance. So long as the jury's guilty verdict is supported by substantial evidence, as it was in Ng, McNeal, and Peerson, the better reasoning is to refrain from second-guessing the jury. Accordingly, we now extend the rulings in Ng, McNeal, and Peerson to the procedural facts in this case, and hold that even where the inconsistency is between the general verdict and a special verdict relating to that same count, the general verdict will stand if it is supported by substantial evidence.
Because substantial evidence does support the general verdict in this case, there is no manifest error affecting a constitutional right. We affirm the general verdict, and hold that Goins waived his right to object to the irreconcilable verdicts by failing to do so before the jury was discharged. Goins admitted to "coming on" to Z, and trying to kiss her twice despite her rejection of his advances. Shari Platt and Steve Haworth gave testimony that was consistent with Z's. Although Goins and Z gave inconsistent testimony regarding whether Goins had tried to lift Z's shirt and touch her thighs, the to-convict instructions required the jury to find only that Goins assaulted Z with the intent to commit indecent liberties, not that he succeeded in touching her sexual or intimate parts. In addition, there is ample evidence that the jury, in finding Goins guilty of second degree assault with intent to commit indecent liberties, found that Z's testimony was more credible than that of Goins.
We turn now to Goins's claim that his trial counsel was ineffective for failing to preserve his right to appeal the inconsistent verdicts. To prevail on a claim of ineffective assistance of counsel, counsel's representation must have been deficient, and the deficient representation must have prejudiced the defendant. State v. Aho, 137 Wash.2d 736, 745, 975 P.2d 512 (1999), citing Strickland v. Washington, 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish ineffective representation, the defendant must show that counsel's performance fell below an objective standard of reasonableness. State v. Maurice, 79 Wash.App. 544, 551-52, 903 P.2d 514 (1995); Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, a defendant must show that but for counsel's performance, the result would have been different. State v. Early, 70 Wash.App. 452, 460, 853 P.2d 964 (1993). There is a strong presumption that trial counsel's performance was adequate, and exceptional deference must be given when evaluating counsel's strategic decisions. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. If trial counsel's conduct can be characterized as legitimate trial strategy or tactics, then defendant did not receive ineffective assistance of counsel. State v. Adams, 91 Wash.2d 86, 90, 586 P.2d 1168 (1978).
Here, if Goins's counsel had brought the inconsistent verdicts to the attention of the trial court before the jury was discharged, the trial court might have sent the jury back for further deliberations as provided by CrR 6.16(b). In that event, the jury might have resolved the inconsistency either by answering yes on the special verdict form, or by acquitting Goins of the charge of second degree assault and convicting him of the lesser included offense of fourth degree assault, or by acquitting him altogether, or by becoming hopelessly "hung" and unable to reach any verdict at all. Trial counsel, being aware that the jury earlier had stood at 11 to 1 for conviction of second degree assault, may not have wished to place Goins at risk both of being convicted of that charge and being required to register as a sexual offender. Certainly, counsel had a legitimate strategic basis for remaining silent, thereby leaving Goins to take his chances on appeal of the inconsistent verdictsparticularly in light of the traditional appellate approach to inconsistent verdicts in criminal cases and uncertainty about how far the rulings in Ng, McNeal and Peerson might be extended. Accordingly, we conclude that Goins's trial counsel was not ineffective for failing to timely object to the inconsistent verdicts.
And neither was counsel ineffective for failing to ask the trial court to set aside the general verdict and grant a new trial. Goins was not entitled to a new trial. Cf., *734 Ng, 110 Wash.2d at 36, 47-48, 750 P.2d 632 (trial court's refusal to grant Ng a new trial by reason of inconsistent verdicts was not reversible error where guilty verdict supported by substantial evidence).
We affirm Goins's conviction of second degree assault.
AGID, J., concurs.
ELLINGTON, J., dissents.
ELLINGTON, J. (Dissenting).
I concur in much of the scholarly majority opinion. I cannot agree, however, with its conclusion that an irreconcilable inconsistency between general and special verdicts on the same count should be governed by the rule that applies to inconsistencies between verdicts on different counts. I therefore respectfully dissent.
As the majority points out, where verdicts on different counts are inconsistent, the question is simply the sufficiency of the evidence to support the verdicts of guilt. This rule is mainly a recognition of the role played by jury lenity. The jury has an "unreviewable power ... to return a verdict of not guilty for impermissible reasons." United States v. Powell, 469 U.S. 57, 63, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). As the Powell court emphasized:
[I]n such situations the Government has no recourse if it wishes to correct the jury's error.... Inconsistent verdicts therefore present a situation where "error" ... most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction[.]
Powell, 469 U.S. at 65, 105 S.Ct. 471. Thus, where two general verdicts are inconsistent, the inquiry is only whether the evidence supports the verdict of guilt.
Where only one count is involved, however, and the general verdict is guilty, lenity offers no explanation for an inconsistent special verdict on the same count, and the integrity of the general verdict is called into question.
I cannot join in extending the "different counts" rule to this circumstance. Rather, I would hold that such verdicts are void, and require a new trial. Goins either acted for purposes of sexual gratification, or he did not. The jury's implicit finding in the general verdict that he did, and its explicit finding in the special verdict that he did not, leave us no confidence in the integrity of either determination, and I would remand for retrial.
NOTES
[1] Under RCW 9A.44.130, any person who is guilty of a "sex offense" must register as a sex offender. Second degree assault under RCW 9A.36.021(e) is not a sex offense. However, a felony with a finding of sexual motivation is a sex offense. RCW 9.94A.127. Had the jury found that Goins assaulted Z with sexual motivation, Goins would have been required to register as a sex offender.
[2] This "compound" crime has been described as a crime piggybacking on top of another crime: to be guilty of the compound crime, the defendant necessarily must be guilty of the underlying predicate felony. 111 Harv. L.Rev. at 778. For example, in United States v. Powell, 469 U.S. at 57 et. seq., 105 S.Ct. 471, the inconsistency arose when the jury acquitted the defendant of conspiring to possess cocaine with intent to distribute, but convicted her of using a telephone to commit that very felony. Another example is State v. Ng, 110 Wash.2d 32, 750 P.2d 632 (1988) where the jury acquitted the defendant of 13 counts of first degree felony murder, even though he did not dispute that the killings occurred, but convicted him of the lesser included offenses of 13 counts of first degree robbery.
[3] Gjerde involved interrogatories that were allegedly inconsistent with each other, but not with the general verdict. Significantly, counsel for appellant realized that the verdicts were inconsistent but failed to object before discharge of the jury, based on the belief that the duty to object lay with the party seeking to enforce the verdict as entered. Id. at 393, 777 P.2d 1072. Relying on federal cases analyzing Fed.R.Civ.P. 49(b), this court held that "[s]uch silence in the face of actual knowledge of an inconsistency at a time it could be cured waives the issue on appeal." Id. at 394, 777 P.2d 1072. The court reasoned that the appellant should not be permitted to "`try his luck with a second jury'" because "`[p]roper respect for the jury verdict and for the court's responsibility to manage its caseload fairly and expeditiously militate against such a course.'" Id. at 394, 777 P.2d 1072, quoting Strauss v. Stratojac Corp., 810 F.2d 679, 683 (7th Cir.1987).
[4] The three dissenting justices in McNeal asserted that RCW 4.44.440 clearly applies in criminal cases and should have applied to void the general verdict in that case. McNeal, 37 P.3d at 288-89, citing State v. Robinson, 84 Wash.2d 42, 45, 523 P.2d 1192 (1974). The majority stated that "[e]ven assuming that RCW 4.44.440, a civil procedure statute, applies to criminal cases, it is clear that the statute does not control here," because RCW 4.44.440 addresses inconsistency between a general verdict and a special verdict on the same charge, not between different charges as was the situation in McNeal. Id. at 283, 37 P.3d 280. Therefore, McNeal alluded to the controversy before the panel in this case but did not address it head on.
[5] The court also observed that the instruction gave the jury a theory under which it could find that Kimball "possessed" a deadly weapon as a matter of law though not of literal fact, and that the jury's special verdict amounted to an expression of opinion upon a legal proposition that should not be allowed to control the fact found by the general verdict. Kimball, 14 Wash.App. at 954-55, 546 P.2d 1217. The court also said:

In addition, the special finding as to whether a defendant was armed with a deadly weapon adds nothing to the elements of first-degree murder and is not a special finding of fact related to the offense charged, as are special interrogatories. It has no relevancy to Kimball's guilt of the crime for which he has been convicted, but only as to punishment. We therefore do not regard the jury's negative finding of possession of a deadly weapon as inconsistent with the general verdict.
Id. at 955, 546 P.2d 1217. Similarly, the special verdict in this case added nothing to the elements of the second degree assault charge. The Legislature has not provided that second degree assault with intent to commit the felony of indecent liberties is a sex offense for purposes of the sexual offender registration statutes, even though the crime, by definition, requires a finding of sexual motivation. Instead, there must be a separate finding of sexual motivation in order for the registration statute to apply. We think it understandable that the jury asked the purpose for the special verdictthe anomaly is difficult to explain in logical terms. Juries, of course, are not told that special verdicts are required for purposes of punishment enhancement where a defendant commits a crime while armed with a deadly weapon, or for purposes of the application of the sexual offender registration statutes, and the explanation is not intuitive among lay people not trained in such legal niceties.
[6] Even in the civil realm, RCW 4.44.440 seems to have lost at least some of its teeth. Under CR 49(b), "if a form for a general verdict accompanied by interrogatories is submitted to the jury, and the answers to the interrogatories are consistent with each other but inconsistent with the general verdict, the answers to interrogatories will, in general, control. [CR 49(b) ], however, also authorizes the court to return the case to the jury for further consideration or may order a new trial. Compare RCW 4.44.440, which would appear to be superseded." 4 ORLAND AND TEGLAND, WASH. PRAC. Rule 49, p. 420 (citations omitted).