DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 8265. Department One. January 17, 1910.]

LEWIS & WILEY, INCORPORATED, *Appellant*, v. J. H. COOK
*et al., Respondents.*[1]

MUNICIPAL CORPORATIONS—STREET ASSESSMENTS—STIPULATION OF
OWNERS—ESTOPPEL. A property owner, petitioning for the improve-
ment of streets on certain conditions being performed, is not bound
by his stipulation agreeing to a certain assessment upon his lots,
or estopped from questioning the validity of the assessment, where
it appears that the city did not perform the stipulated conditions
but levied the assessments in entire disregard of the stipulation.

Appeal from a judgment of the superior court for King
county, Main, J., entered August 17, 1909, in favor of the
defendants, upon sustaining a demurrer to the complaint, in
an action to enjoin the prosecution of an action for the can-
cellation of assessments for street improvements. Affirmed.

*Leander T. Turner* and *O. B. Thorgrimson,* for appellant.

*Charles A. Riddle,* for respondents.

FULLERTON, J.—In the summer of 1905 certain persons,
representing themselves to be the owners of a majority of
the property abutting upon certain streets in the city of
Seattle, petitioned the board of public works of that city to
improve the streets named in the petition in one general sys-
tem of improvement, by establishing new grade lines thereon

[1]Reported in 106 Pac. 198.

and grading and regrading the streets so as to make them conform thereto. The petition contained certain reservations and stipulations, intended for the benefit of the petitioners as property owners, which the laws then in force governing the methods and procedure for the improvement of streets did not give them, among which were the following:

"First: That the undersigned, in signing this petition, hereby expressly reserve the right to claim a just compensation for the damages to their property caused by the grading and regrading of the streets embraced in the district, but agree, notwithstanding that damages may be so awarded, to pay not to exceed a cost of six dollars ($6) for each front foot (as defined by the city charter) chargeable to the abutting property so damaged, provided, however, that the limit of assessment of $6 shall not apply to the property within said district not damaged, which said property shall be assessed according to special benefits arising by reason of said improvement; provided, further, that the contract price of such grading and regrading on the streets and avenues in said improvement described shall not exceed fifteen cents per cubic yard for fill and ten cents per cubic yard for excavation.

"Second: That the city of Seattle, in entering into a contract for the performance of said improvement, shall insert therein a provision for and on behalf of any owner of property within the limits of the district as set forth above, who may desire the same to be excavated or filled to an even grade with the streets abutting the same at the time that said streets are graded or regraded, and at the price bid by said contractor for the excavation and filling of the streets embraced in said district; provided, that where private property is to be filled, the owner may require that said property be not filled above a specified height for the construction of a basement therein.

"Third: That the undersigned do hereby severally stipulate that all private property belonging to them within the limits of the said district may be excavated or filled by said contractor as hereinabove provided, and they do further severally agree, upon demand of said contractor, after the execution of the contract between said contractor and the city, to enter into a written contract with said contractor for the performance of said excavation or filling, as may be required

by the owner, at the prices bid by said contractor per cubic
yard for the grading of the streets embraced in this district;
provided; that said contractor shall accept in full satisfac-
tion for such excavation or filling of said private property a
lien against said private property, payable at the option of
the owner of said private property, in cash, upon monthly
estimates made in general conformity with the monthly esti-
mates made upon the streets abutting said property, or the
said owner may elect to pay for said improvement at the
expiration of five or ten years after the completion and ac-
ceptance of the work by the Board of Public Works, with
interest thereon at the rate of seven per cent (7%) per
annum, interest payable annually."

After the filing of the petition, the city council by or-
dinance established new grades on the streets mentioned,
adopted plans and specifications for their improvement, and
directed the corporation counsel to begin proceedings to
condemn such property as it would be necessary to take or
damage in making the improvements. Such an action was
begun and prosecuted to a judgment and decree, in which
such property as it was found necessary to take or damage
in constructing the improvement was condemned, and the
just compensation to be paid the owners of the property so
taken or damaged fixed and determined. The city there-
upon paid the awards, and by ordinance established a local
improvement district comprised of the territory "abutting,
adjacent or proximate" to the streets on which the new grade
lines were established, and directed that the same be improved
in accordance with such grade lines, and that the cost there-
of, less a certain sum appropriated from the general fund,
be paid by an assessment upon the property which should be
found to be benefited by the improvement. That part of the
ordinance directing the improvement to be made and pro-
viding for an assessment to pay the costs thereof was in the
following words:

"That [the streets in the assessment district] be improved,
by grading and regrading the same, and by the construction
of the necessary bulkheads and retaining walls and by the

construction of such temporary sewers, and the alteration, removal and reconstruction of the existing sewer system, as may be rendered necessary by the grading and regrading of said streets, avenues and approaches. Said improvement to be made in accordance with the stipulation and agreement contained in the property owners' majority petition therefor, being file No. 28,822 of the records of the city of Seattle, in the office of the comptroller of said city.

"Said improvement to be made according to the plans and specifications prepared under the direction of the city engineer, and on file in the office of the department of public works; and that assessments be levied and collected upon all lots and parcels of land specially benefited by said improvement to defray the cost and expense thereof over and above the amount herein appropriated out of the general fund and local improvement district bonds be issued as hereinafter provided, and said assessment shall become a first lien upon all the property liable therefor, and for the payment of all local improvement district bonds as hereinafter provided." Ordinance, Seattle, No. 13,309.

Acting pursuant to the authority and direction of this ordinance, the board of public works entered into a contract in writing with the appellant to perform the required work, inserting in the writing all of the conditions contained in the landowner's petition filed with the board of public works. The contractor thereupon began the performance of the work, and while prosecuting it entered into a contract with the respondents to excavate lot two in block six, owned by the respondents, agreeing to bring the level thereof to an even grade with the street on which it abutted, at the rate per cubic yard allowed for like work in the appellant's contract with the city, namely, at ten cents per cubic yard for all earth excavated and removed. The contract contained the following recital:

"That, whereas, the said contractor heretofore under date of the sixth day of April, A. D. 1907, entered into a certain contract with the city of Seattle for the improvement of Jackson street and other streets and places in the said city of Seattle, as ordered by ordinance No. 13,309, approved

February 9, 1906, in accordance with certain plans, speci-
fications and stipulations set forth and referred to in the
said contract, and the said owner desires to and does hereby
ratify and adopt the action of said city in making said con-
tract, and desires to obtain the benefit of the provisions in-
serted in the said contract for and on behalf of the said
owner of the property hereinafter described, situated within
the limits of the district to be improved by said ordinance."

At the initiation of the improvement proceedings, the
property so graded was owned by one Gerald Frink. Frink
signed the petition asking for the improvement filed with
the board of public works. He was the owner of the prop-
erty, also, at the time the condemnation proceedings were
brought by the city attorney, and received the award made
by the jury in that proceeding, the jury finding that the
property would be damaged by the improvement of the
streets, over and above all benefits it would receive thereby,
in the sum of $1. Prior to the time the·actual work on the
street began, however, he conveyed all his interests to the
respondents in this action. The lot in question had a street
frontage of 97.2 feet. To pay the cost of the improvement
of the street it was assessed by the city in the sum of $865,
or at· the rate of $8.90 (nearly) per front foot.

The respondents conceived themselves aggrieved by this
assessment, and brought an action against the city of Seattle
to cancel the same, alleging as grounds therefor that the
benefits accruing to the property by reason of the improve-
ment had been offset by the jury against the damages caused
the property by the improvement. While that action was
pending, the present action was begun by the appellant to
enjoin the cancellation of the assessment for any greater
sum than the excess thereof over six dollars per front foot;
the claim being that respondents were estopped by reason of
their acts, and the acts of their immediate grantor, from as-
serting that the property was not liable to an assessment of
six dollars per front foot.

To its complaint, which embodied the foregoing facts, and

the further facts that the appellant is the contractor who made the street improvement, that the only means by which it can be reimbursed for its labor and advancements is by the assessments made upon the property abutting upon the improvement, and that it will suffer an irreparable loss if a cancellation of this assessment is allowed in a greater sum than the excess of six dollars per front foot, a demurrer was interposed, and sustained by the court. The appellant elected to stand on its complaint, whereupon its action was dismissed, and a judgment for costs entered against it. This appeal was thereupon taken.

No question is made as to the form of the proceeding by counsel for the respondents, and, for that reason, we ourselves will not question it. We do not wish to be understood, however, as committing ourselves to the doctrine that one action of equitable cognizance will lie to restrain the prosecution of another.

On the merits of the controversy, the contention of the appellant is simple. It is thought that the respondents are estopped to deny the validity of the assessment upon their property up to the amount of six dollars per front foot, because their predecessor in interest petitioned the city to make the improvement agreeing to permit an assessment on the property at the rate of six dollars per front foot, on certain conditions being performed, and that the respondents, as his successor in interest, took advantage of one of the conditions to procure the grading of the lot at a low rate. But it is manifest, from a comparison of the petition asking for the improvement and the ordinances of the city passed authorizing the same, that the city, when it ordered the improvement, paid but little heed to any of the limitations contained in the petition, and especially none to those which were intended for the actual benefit of the petitioners. The conditions that would benefit the petitioners, it will be observed, not only limited the amount of the assessment on lots damaged in excess of benefit to $6 per front foot, but provided,

in effect, that such lots should not be assessed in any sum unless the amounts that could be assessed on lots for actual benefits should not equal the cost of the improvement. This stipulation was entirely disregarded. The property in the assessment district was all assessed alike, without distinction between that which could be lawfully assessed for actual benefits, and that which could only be assessed under the stipulation. Whether the property actually benefited was assessed for the full amount of the benefits it received does not appear, and hence it does not appear whether the respondents' property is liable to assessment in any sum, much less does it appear that it is liable to an assessment of $6 per front foot. The respondents, therefore, are not estopped from questioning the validity of the assessment on their property by any act of their own or their predecessor in interest, and the present action is without merit.

The case is not altered by the fact that the stipulations contained in the petition were inserted in the appellant's contract with the city. The only provision applicable to the contractor was the second one above mentioned, relating to the price to be charged for excavating and filling private property, and this was a condition the city has the right to insert in any contract regardless of any agreement on the part of the property holders.

The judgment is affirmed.

RUDKIN, C. J., GOSE, and CHADWICK, JJ., concur.