FILED
COURT OF APPEALS
DIVISION II

2013 JUL 30 AM 10: 28

STATE OF WASHINGTON

BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41916-5-II |
| Respondent, | |
| v. | |
| JEFFREY LAMONT RANDALL, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Jeffrey Lamont Randall appeals his jury convictions of two counts of unlawful delivery of a controlled substance to a minor with sexual motivation and two counts of involving a minor in a drug transaction to deliver a controlled substance. Randall argues that the trial court violated his right to a unanimous verdict because the trial court did not give a *Petrich*[1] instruction, and failure to do so was not harmless. He also argues that (1) insufficient evidence supports the jury's finding of sexual motivation, (2) the jury returned inconsistent verdicts, (3) the State violated his right to be free from double jeopardy by failing to allege specific incidents to support the involving a minor in a drug transaction and unlawful delivery convictions, (4) the trial court gave an erroneous special verdict jury instruction that required the jury to be unanimous to answer "no" on the special verdict forms, and (5) the trial court should have given a missing witness instruction for the victims' parents. Randall makes various other arguments in his statement of additional grounds (SAG).

---

[1] *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), *modified in part by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988).

We hold that (1) the failure to give a *Petrich* instruction was harmless, (2) sufficient evidence supports the jury's sexual motivation findings, (3) the jury's verdicts were not inconsistent, (4) Randall's arguments regarding double jeopardy are hypothetical and not ripe for review, (5) the trial court's special verdict instruction was proper, and (6) a missing witness instruction for the victims' parents was unnecessary. Randall's remaining SAG claims are not preserved for appeal, too vague, or reliant on matters outside the record; therefore we do not further consider them. Accordingly, we affirm.

FACTS

I. RANDALL'S RELATIONSHIP WITH HT AND VN

In spring 2008, HT and VN[2] were 15-year-old female students at Tacoma high schools. Students, including HT and VN, commonly spent time at a particular bus stop near the school, smoking cigarettes and marijuana. Randall, a 40-year-old male known as "House" and "Weed Man," had a reputation among the students for providing alcohol, marijuana, and transportation. 4 Verbatim Report of Proceedings (VRP) at 636-37, 642, 648, 5 VRP at 733, 8 VRP at 1334. HT and VN met Randall through friends and started regularly buying marijuana from him. HT and VN also desired to be seen with him to gain popularity at school.

From approximately March to early June 2008, Randall picked up HT and VN every day after school. They drove around Pierce County selling marijuana out of his car. But before Randall permitted HT and VN to sell marijuana, he put them through loyalty tests. These tests included talking about themselves while naked, kissing him, and taking their shirts off for him. Eventually, he required each girl to have sexual intercourse with him. Randall knew that HT and

2

VN were only 15 at the time and that they did not want to engage in intercourse with him. After they passed the loyalty tests, HT and VN participated in Randall's sales by weighing the marijuana, collecting money, and taking marijuana to sell at school. They were often with Randall all afternoon and evening and would sneak out of their parents' homes to be with Randall at night.

Randall regularly gave HT and VN marijuana and alcohol for their own use and he sometimes gave them a portion of the sale proceeds as compensation. Randall called HT and VN "Mama" and "Little Mama" and made them call him "Papa." 4 VRP 665, 5 VRP at 733, 837. When he became irritated with either HT or VN, he treated them like they were "in trouble" and scared them by telling them about his "goons." 4 VRP at 664. HT and VN feared Randall's "goons" as dangerous men who would hurt people at his command. 4 VRP at 664, 5 VRP at 802.

## II. INVESTIGATION AND TRIAL

In late April or early May 2008, another high school student reported to police rumors that Randall had raped HT and VN. HT and VN initially denied knowing Randall, but they later admitted that they had lied because they feared for their safety. In June 2008, a Tacoma police officer arrested Randall on an unrelated warrant. In jail, Detective Steven Reopelle interviewed Randall about the rape and drug allegations.

During trial, the State filed a third amended information charging Randall with four counts of third degree child rape, two counts of involving a minor in a drug transaction, and two counts of unlawful delivery with sexual motivation. The information did not include specific

---

[2] We use initials to protect minors' identity.

3

dates for the offenses, stating that the offenses had occurred between March 1 and June 4, 2008. Randall acknowledged receipt of the amended information, waived formal reading, waived any objection to the amendment, and pleaded not guilty.

At trial, HT and VN testified consistently with the facts outlined above and admitted that they had lied during the initial police interviews, that they had lied to their parents, and that they could not remember specific dates or times of the events occurring nearly three years earlier. They testified that they had sold marijuana for Randall for about three months in spring 2008 and that he had separately raped them each twice. Randall called one witness, the house manager at the group home facility where Randall lived at the time of the allegations. The house manager testified about the facility in general, that there was always staff onsite who performed room checks all hours of the day, and that Randall never caused problems for the staff. Randall did not testify.

Randall proposed a missing witness instruction for HT's and VN's parents and a *Petrich* unanimity jury instruction related to each charge. The trial court refused both, reasoning that a missing witness instruction was unnecessary and that the evidence established a continuing course of conduct involving an ongoing enterprise with a single objective; thus a *Petrich* unanimity instruction was not needed. Regarding the sexual motivation[3] special verdict, the trial court instructed the jury:

> You will also be furnished with two special verdict forms for the crimes charged in Counts VII and VIII. If you find the defendant not guilty of these crimes, do not use the special verdict forms. If you find the defendant guilty, you

---

[3] The court defined sexual motivation to mean "that one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification." CP at 296 (Jury Instruction No. 24).

will then use the corresponding special verdict form or forms and fill in the blank with the answer "yes" or "no" according to the decision you reach. In order to answer the special verdict forms "yes," you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you have a reasonable doubt as to the question, you must answer "no."

Clerk's Papers at 304 (Jury Instruction No. 31).

During closing arguments, the State argued that the offenses occurred sometime during the charged time period and explained that the exact dates were not necessary because it was clear that the acts occurred "all the time." 11 VRP at 1822. Randall's counsel generally denied all allegations and argued that (1) HT and VN had picked Randall as an easy target to unfairly blame when their drug and alcohol use was revealed; and (2) HT and VN lacked credibility because their testimony lacked detail, they lied to their parents and police, and their memories were impaired from alcohol and drug use. Randall's counsel also pointed out inconsistencies between HT's and VN's testimony and the testimony from other witnesses and claimed that Randall was innocent and simply a lonely man who reached out to kids because he wanted to help them.

The jury acquitted Randall of the rape charges but found him guilty of two counts of involving a minor in a drug transaction, one count for each victim, and two counts of unlawful delivery of a controlled substance with sexual motivation, one count for each victim. Randall appeals.

## ANALYSIS

### I. UNANIMOUS VERDICTS

First, Randall contends that the trial court violated his right to a unanimous verdict because the trial court did not give a *Petrich* instruction and the failure to do so was not

harmless. Specifically, he argues that (1) HT's and VN's testimony was general in nature and could not have supported the jury's verdicts, and (2) the State presented insufficient evidence of unlawful delivery and involving a minor in a drug transaction. Assuming, without deciding, that both the unlawful delivery and involving a minor convictions involved multiple acts that required a *Petrich* unanimity instruction,[4] we hold that any error in failing to give such instruction was harmless and that HT's and VN's testimony was sufficient to support four convictions; one unlawful delivery charge per victim and one involving a minor charge per victim.

To convict a criminal defendant, a unanimous jury must conclude that the criminal act charged has been committed. *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), *modified in part by State v. Kitchen*, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988). In cases where several acts are alleged, any one of which could constitute the crime charged, the jury must unanimously agree on the act or incident that constitutes the crime. *Kitchen*, 110 Wn.2d at 411; *Petrich*, 101 Wn.2d at 572. In such "'multiple acts'" cases, Washington law applies the "'either or'" rule: "'[E]ither the State must elect the particular criminal act upon which it will rely for conviction, or . . . the trial court [must] instruct the jury that all of them must agree that the same underlying criminal act has been proven beyond a reasonable doubt.'" *State v. Hayes*, 81 Wn. App. 425, 430-31, 914 P.2d 788, *review denied*, 130 Wn.2d 1013 (1996) (alteration in original) (quoting *Kitchen*, 110 Wn.2d at 411).

---

[4] We move directly to a harmless error analysis because we note some inconsistency between the State's concession of error in its brief and its retraction of this concession, at least in part, at oral argument. *Compare* Br. of Resp't at 22-23 with Wash. Court of Appeals oral argument, *State v. Randall*, No. 41916-5-II (Jan. 18, 2013) at 18 min., 48 sec.—23 min., 20 sec. (on file with court).

We presume that the trial court's failure to give a *Petrich* instruction when needed is prejudicial. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009); *State v. Coleman*, 159 Wn.2d 509, 512, 150 P.3d 1126 (2007). In multiple acts cases, "when the State fails to elect which incident it relies upon for the conviction or the trial court fails to instruct the jury that all jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt," we will find this error harmless "only if no rational trier of fact could have entertained a reasonable doubt that each incident established the crime beyond a reasonable doubt." *Kitchen*, 110 Wn.2d at 405-06.

The State argues that this case is similar to *Bobenhouse*, 166 Wn.2d 881; *State v. Camarillo*, 115 Wn.2d 60, 794 P.2d 850 (1990); and *State v. Allen*, 57 Wn. App. 134, 139, 787 P.2d 566 (1990), where the courts held that the lack of a unanimity instruction was harmless. In these cases, the State charged the defendants with one count of the alleged crimes and the victims testified that several incidents occurred, each one of which could have supported the one count charged. *Bobenhouse*, 166 Wn.2d at 893-94; *Camarillo*, 115 Wn.2d at 70; *Allen*, 57 Wn. App. at 139.[5] At trial, the defendants offered general denials and presented no evidence on which the jury could discriminate among incidents. *Bobenhouse*, 166 Wn.2d at 895; *Camarillo*, 115 Wn.2d at 72; *Allen*, 57 Wn. App. at 139. These courts determined that sufficient evidence established that the acts occurred and the lack of the unanimity instruction was harmless. *Bobenhouse*, 166 Wn.2d at 895; *Camarillo*, 115 Wn.2d at 72; *Allen*, 57 Wn. App. at 139.

---

[5] Allen was actually charged with three counts of indecent liberties involving two victims, but only argued that the unanimity instruction should have been given for one of the counts; thus the analysis focused on the one count. *Allen*, 57 Wn. App. at 137.

Randall's case is similar to *Bobenhouse*, *Camarillo*, and *Allen*. Importantly, the crucial point in each was that "'proof of the substantially similar incidents relied upon a single witness' detailed, uncontroverted testimony.'" *Camarillo*, 115 Wn.2d at 70 (quoting *State v. Camarillo*, 54 Wn. App. 821, 828, 776 P.2d 176 (1989)). Here, the State presented two witnesses' detailed uncontroverted testimony about the substantially similar incidents. HT and VN testified that Randall involved them in his marijuana sales and provided them with marijuana for their own use every day between March and June 2008. And, as in *Bobenhouse*, *Camarillo*, and *Allen*, Randall generally denied the allegations, the main issue at trial was the victims' credibility, and the jury had no uncontroverted evidence on which to rationally discriminate among incidents. *Bobenhouse*, 166 Wn.2d at 895; *Camarillo*, 115 Wn.2d at 70-71; *Allen*, 57 Wn. App. at 139. Here, the jury's verdict reflects that it accepted HT's and VN's testimony; we will not disturb the jury's credibility determinations. *Camarillo*, 115 Wn.2d at 71.

Randall relies on *Coleman* to argue that the error was not harmless. *Coleman*, 159 Wn.2d at 512. We disagree. The State charged Coleman with one count of child molestation for each victim for acts occurring over a period of three years. *Coleman*, 159 Wn.2d at 511. At Coleman's trial, a Child Protective Services worker testified that the victim, CV, told her that (1) Coleman inappropriately touched her while watching a particular movie on a particular day, and (2) additional touching incidents occurred in Coleman's house and car. *Coleman*, 159 Wn.2d at 514. Then, CV's school counselor and the other witness testified that CV told them that "nothing really happened" during the movie. *Coleman*, 159 Wn.2d at 514. And, CV testified that no touching occurred at the movie. *Coleman*, 159 Wn.2d at 514. But, the State did not abandon the movie incident even after this contradictory evidence and instead, during closing

arguments, told the jury to ignore CV's contradiction and convict anyway.[6]  *Coleman*, 159 Wn.2d at 515.

The Supreme Court held that the failure to give a unanimity instruction was not harmless in that situation, explaining that

> [a]n election or unanimity instruction may not be required in a multiple act case if there is no controverted evidence. *Camarillo*, 115 Wn.2d 60, 794 P.2d 850.  But the case before us is not one lacking controverted evidence; e.g., a case in which a witness says off-handedly that abuse occurred in five different instances but describes with particularity only one instance.  The focus of a trial, at least for jurors, potentially changes once evidence is introduced of separate identifiable incidents.

*Coleman*, 159 Wn.2d at 514.  The Supreme Court concluded that because the incident at the movie was a focus at trial and because CV did not provide evidence of any other instances with particularity, rational jurors could disagree about whether molestation occurred at the movie specifically and it was prejudicial error to omit the *Petrich* instruction.  *Coleman*, 159 Wn.2d at 515.

But unlike in *Coleman*, here there was no contradictory evidence of a specific incident.  And there were no separate identifiable incidents among which the jury could distinguish.  HT and VN did not describe any one incident with particularity.  Thus, Randall's jury considered the "totality of the evidence of several incidents to ascertain whether there was proof beyond a reasonable doubt to substantiate guilt because of the acts constituting one incident and also to believe that if one happened, then all must have happened."  *Camarillo*, 115 Wn.2d at 71.

---

[6] Here, HT and VN's stories changed between the initial questioning by parents and the police and their testimony at trial.  But HT and VN also explained the reason why their testimony changed—their fear of Randall and his goons.  And when the girls testified at trial, their testimony was not contradictory.

Randall's jury determined that there was such proof. We hold that the trial court's failure to give a unanimity instruction was harmless.[7]

## II. SUFFICIENT EVIDENCE OF SEXUAL MOTIVATION

Randall next argues that the State presented insufficient evidence to support the jury's sexual motivation findings related to the unlawful delivery to a minor convictions.[8] Concluding that sufficient evidence supports the jury's sexual motivation findings when viewed in the light most favorable to the State, we reject this argument.

Evidence is sufficient to support a guilty finding if, "after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *State v. Rose*, 175 Wn.2d 10, 14, 282 P.3d 1087 (2012). "A claim of insufficient evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from that evidence." *State v. Caton*, 174 Wn.2d 239, 241, 273 P.3d 980 (2012). We consider circumstantial and direct evidence to be equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). And we defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v.*

---

[7] Randall also argues that HT's and VN's general testimonies did not properly support Randall's convictions. But, HT and VN did not describe any one incident with particularity which is why the failure to give a *Petrich* instruction was harmless. Also, Randall argues that the lack of specificity in his verdict violates his right to appeal because he does not know which allegations supported the jury's verdict. He asserts that the jury's acquittal on the rape charges show that the jury did not find all of the witnesses' testimony entirely credible and that we cannot conclude the jury simply accepted the complaining witnesses' allegations without question. But, we do not review a jury's determination on witness credibility or the weight of the evidence, and Randall's verdicts are not contradictory. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *aff'd*, 166 Wn.2d 380, 208 P.3d 1107 (2009).

No. 41916-5-II

*Thomas,* 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *aff'd,* 166 Wn.2d 380, 208 P.3d 1107 (2009).

An allegation of sexual motivation requires the State to prove that sexual gratification was among the defendant's purposes in committing the charged offense. *State v. Thompson,* 169 Wn. App. 436, 476, 290 P.3d 996 (2012), *review denied,* 176 Wn.2d 1023 (2013) (citing RCW 9.94A.030(47)). The State must present "'evidence of identifiable conduct by the defendant while committing the offense which proves beyond a reasonable doubt the offense was committed for the purpose of sexual gratification.'" *Thompson,* 169 Wn. App. at 476 (quoting *State v. Halstien,* 122 Wn.2d 109, 120, 857 P.2d 270 (1993)). Evidence of sexual motivation is not limited to criminal sexual contact. *Halstien,* 122 Wn.2d at 121. In fact, the Supreme Court has explained, "Reading in a requirement of sexual contact would undermine the purpose of the statute, which was enacted to fill a perceived gap in the criminal code not covered by existing sex offense crimes." *Halstien,* 122 Wn.2d at 121.

HT's and VN's testimony provided sufficient evidence to support the jury's finding that Randall delivered controlled substances to them for the purpose of his sexual gratification. The jury heard testimony describing Randall's relationship with the victims. Randall exploited HT's and VN's low self-esteem by encouraging them to believe that selling marijuana for him would improve their social status among their peers. Randall wanted HT and VN to rely on him emotionally and always call him if they needed anything. The records of the phone calls between Randall and HT and VN spanned through all hours of the night and day over the

---

[8] The jury found sexual motivation for the unlawful delivery convictions but not for the involving a minor in drug transaction charges.

11

charged period of time and Randall withheld marijuana whenever HT or VN upset him. 5 VRP at 799-801. Further, Randall gave HT and VN nicknames of "Mama" and "Little Mama" and made them call him "Papa," while the other high school kids all called him "House" and "Weed Man." 4 VRP 665, 5 VRP at 733, 837. This is circumstantial evidence that he considered and treated HT and VN as his girlfriends.

Randall conditioned HT and VN's participation in his marijuana selling business on the performance of sexualized loyalty tests, and he bragged to another high school student that he had sex with both HT and VN. These loyalty tests included talking about themselves while naked, kissing him, and taking their shirts off for him. After the girls passed Randall's sexual loyalty tests, he allowed them to sell marijuana for him, and in return, Randall delivered marijuana to them for their own use. The jury could have reasonably believed that the evidence demonstrated that Randall treated HT and VN as girlfriends, that he gave the girls marijuana in part because he wanted them to perform sexual acts, and that he received sexual gratification from their sexual acts. Taking the evidence in the light most favorable to the State, we hold that the jury could reasonably conclude that Randall delivered marijuana to HT and VN for the purpose of his sexual gratification, and that the State presented sufficient evidence for the jury to find that Randall unlawfully delivered controlled substances to HT and VN with sexual motivation.[9] *Rose*, 175 Wn.2d at 14.

---

[9] Randall raises further sufficiency claims in his SAG. Since we have adequately addressed this issue as raised by Randall's appellate counsel, we do not review it again in the SAG context. *See* RAP 10.10(a).

12

III. INCONSISTENT VERDICTS

Randall next argues that the jury's sexual motivation finding and simultaneous rape acquittals created inconsistent verdicts and these inconsistent verdicts also show a lack of a unanimous verdict. We disagree.

"'Inconsistent verdicts . . . present a situation where "error" in the sense that the jury has not followed the court's instructions, most certainly has occurred.'" *State v. Goins*, 113 Wn. App. 723, 730, 54 P.3d 723 (2002), *aff'd*, 151 Wn.2d 728, 92 P.3d 181 (2004) (quoting *United States v. Powell*, 469 U.S. 57, 65, 105 S. Ct. 471 83 L. Ed. 2d 461 (1984)). But "'[w]here the jury's verdict is supported by sufficient evidence from which it could rationally find the defendant guilty beyond a reasonable doubt, we will not reverse on grounds that the guilty verdict is inconsistent with an acquittal on another count." *Goins*, 113 Wn. App. at 734 (alteration in original) (quoting *State v. Ng*, 110 Wn.2d 32, 48, 750 P.2d 632 (1988)).

Here, Randall's jury was instructed that to convict of third degree child rape it must find that he had "sexual intercourse with a child who is at least fourteen years old but less than sixteen years old, who is not married to the person, and who is [at] least forty-eight months younger than the person." 2 CP at 278 (Jury Instruction No. 6). The trial court defined "sexual intercourse" as "that the sexual organ of the male entered and penetrated the sexual organ of the female and occurs upon any penetration, however slight[,] or any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another." 2 CP at 283 (Jury Instruction No. 11). The trial court also instructed the jury that "sexual motivation" means "one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification." 2 CP at 296 (Jury Instruction No. 24).

13

We hold that acquittals on the rape charges were not inconsistent with a guilty finding for sexual motivation because sexual motivation did not require the jury to find that sexual intercourse occurred. Instead, the jury had to agree only that Randall's acts were committed, at least in part, for sexual gratification purposes. The jury could reasonably believe that Randall delivered a controlled substance for his sexual gratification while also simultaneously believing sexual intercourse did not occur; therefore, the verdicts were consistent.

## IV. DOUBLE JEOPARDY

Randall further argues the State's failure to allege specific incidents violated his right to be free from double jeopardy because the State may be able to bring further prosecutions for the same acts. We disagree.

We review double jeopardy claims de novo. *State v. Kelley*, 168 Wn.2d 72, 76, 226 P.3d 773 (2010). "The United States Constitution provides that a person may not be subject 'for the same offense to be twice put in jeopardy of life or limb.'" *State v. Chouap*, 170 Wn. App. 114, 122, 285 P.3d 138 (2012) (quoting U.S. CONST. amend. V). Similarly, the Washington Constitution provides that a person may not be put in jeopardy twice for the same offense. *Chouap*, 170 Wn. App. at 122 (quoting WASH. CONST. art. I, § 9). Randall does not argue that he has twice been put in jeopardy for the same offense. Instead, he argues that at some time in the future he *may* twice be put in jeopardy. We reject his argument as hypothetical and not ripe

No. 41916-5-II

for review.[10]

## V. SPECIAL VERDICT INSTRUCTION

Randall argues that the trial court gave an erroneous special verdict jury instruction that required the jury to be unanimous to answer "no" on the special verdict forms. Br. of Appellant at 23. We disagree.

The challenged jury instruction read:

> You will also be furnished with two special verdict forms for the crimes charged in Counts VII and VIII. If you find the defendant not guilty of these crimes, do not use the special verdict forms. If you find the defendant guilty, you will then use the corresponding special verdict form or forms and fill in the blank with the answer "yes" or "no" according to the decision you reach. In order to answer the special verdict forms "yes," you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you have a reasonable doubt as to the question, you must answer "no."

CP at 304 (Jury Instruction No. 31).

We review alleged errors of law in jury instructions de novo. *Boeing Co. v. Key*, 101 Wn. App. 629, 632, 5 P.3d 16, *review denied*, 142 Wn.2d 1017 (2001). Randall's contention regarding this jury instruction is untenable because it relies on the special verdict instruction

---

[10] Also, in his SAG, Randall asserts that his right to be free from double jeopardy was violated when (1) the trial court admitted evidence that was also used in a Tacoma Municipal Court misdemeanor prosecution, (2) the trial court admitted evidence seized incident to arrest, (3) the State used evidence against him for a misdemeanor in municipal court and in this case, (4) the State charged him with multiple counts of involving a minor in a drug transaction without establishing specific and different places and times, and (5) the State failed to seek trial on all drug charges at the same time. Randall's arguments relating to the Tacoma Municipal Court cases depend on matters outside the record; thus we cannot address them on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). And, although RAP 10.10 does not require Randall to refer to the record or to cite applicable authority in his SAG, he is required to inform us of the "nature and occurrence of alleged errors." RAP 10.10(c). Randall's remaining assertions regarding double jeopardy are too vague to allow this court to identify the issues; thus, we do not further consider them.

given in *State v. Bashaw*, 169 Wn.2d 133, 145, 234 P.3d 195 (2010), and later rejected in *State v. Guzman Nuñez*, 174 Wn.2d 707, 709-10, 285 P.3d 21 (2012). In *Nuñez*, our Supreme Court overruled *Bashaw*'s nonunanimity rule, concluding it "conflicts with statutory authority, causes needless confusion, does not serve the policies that gave rise to it, and frustrates the purpose of jury unanimity." *Nuñez*, 174 Wn.2d at 709-10. Applying *Nuñez*, we hold that the trial court properly instructed the jury regarding the special verdict.

## VI. SAG ISSUES

### A. Missing Witnesses

In his pro se SAG, Randall asserts that the trial court erred by failing to give his proposed missing witness instruction based on the absence of HT's and VN's parents. We disagree.

We review the adequacy of jury instructions de novo. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996). A missing witness instruction is proper when (1) the witness is peculiarly available to the party; (2) the testimony relates to an issue of fundamental importance as contrasted to a trivial or unimportant issue; and (3) the circumstances establish, as a matter of reasonable probability, that the party would not knowingly fail to call the witness in question unless the witness's testimony would be damaging. *State v. Montgomery*, 163 Wn.2d 577, 598-99, 183 P.3d 267 (2008).

At trial, Randall asked for a missing witness instruction. The State opposed the instruction as unnecessary under the *Montgomery* test. The State explained that Randall's counsel had interviewed the witnesses, knew where to find them, and could have subpoenaed them as well. The State called one of the mothers to testify, but the court determined she was

intoxicated and not a competent witness. The mother did not return later to testify as instructed. The court ruled that a missing witness instruction was not proper. We agree.

HT's and VN's parents were not peculiarly available to either party and their testimony would not have been of fundamental importance because they did not have independent knowledge of their daughters' interactions with Randall. *Montgomery*, 163 Wn.2d 598-99. Moreover, there is no evidence that the State failed to call the witness because the witness's testimony would be damaging. We hold the trial court did not err by failing to give a missing witness instruction.

## B. Arresting Officer

Randall further asserts that the arresting officer should have testified at the CrR 3.5 and 3.6 hearing about the search of Randall's car. Because this claimed error was not raised in the trial court, we decline to address it. Thus, Randall did not preserve for appeal any error regarding the arresting officer; in addition, Randall's assertion is too vague for us to address. RAP 2.5(a); RAP 10.10.

## C. Jail Interview

Randall next asserts that the trial court erred by admitting into evidence his jail interview with Detective Reopelle. Randall claims that the jail interview violated his right to counsel because at the time of the interview, he was in custody on misdemeanor marijuana charges following his arrest for a traffic incident. Randall explains that he was waiting for his misdemeanor arraignment when Detective Reopelle pulled him out of the line and took him back to the jail for the interview. According to Randall, this action violated his right to counsel

because it was obvious that Detective Reopelle did not want Randall to be assigned counsel before the interview.[11]

But, Randall does not explain how the trial court erred. Instead, he asserts that he had appointed counsel before the interview with Detective Reopelle, citing municipal court records. SAG at 40. Because Randall bases this assertion on matters outside our record, we cannot consider it on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

### D. Prosecutorial Misconduct

Next, Randall asserts that the State committed prosecutorial misconduct by filing an amended information that added charges more than 18 months after his original indictment. At trial, Randall expressly waived any objection to the amendment on the record. When a defendant fails to object at trial to alleged prosecutorial misconduct, he waives any error on appeal unless he can show that the misconduct was so flagrant or ill intentioned that the trial court could not have cured the error by instructing the jury. *State v. Weber*, 159 Wn.2d 252, 270,

---

[11] This issue was raised during Randall's CrR 3.5 and 3.6 motions. His trial counsel explained that Detective Reopelle was the lead detective on the rape charges but Detective Reopelle had not yet filed the rape charges on the day Randall was scheduled to be arraigned on the misdemeanor possession charges. At the motion hearing, Randall asserted that Detective Reopelle and the prosecutor's office had violated his right to counsel because they wrongfully postponed Randall's misdemeanor arraignment so that Detective Reopelle could interview him before he was arraigned. In response, the State argued that Randall could not show evidence of any conspiracy to deprive him of his rights, that Randall was properly read his *Miranda* warnings before the interview, that his statements were voluntary, and that Detective Reopelle discontinued the interview as soon as Randall invoked his rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1062, 16 L. Ed. 2d 694 (1966).

The trial court denied Randall's motion to suppress his interview with Detective Reopelle, characterizing the issue as not involving *Miranda* rights but, instead, involving whether the sequencing of events justified a suppression order. The trial court ruled there was no evidence of a conspiracy between Detective Reopelle and the prosecutor's office to circumvent Randall's right to counsel.

149 P.3d 646 (2006), *cert. denied*, 551 U.S. 1137 (2007). Randall fails to meet this heightened burden.

Additionally, Randall asserts that the trial court erroneously denied a mistrial based on opinion testimony from Detective Reopelle and HT and that the State committed misconduct by eliciting that testimony. Although RAP 10.10 does not require Randall to refer to the record or cite applicable authority, he is required to inform us of the "nature and occurrence of alleged errors." RAP 10.10(c). His prosecutorial misconduct claims are too vague and the record does not support them; thus, we cannot address them.

### E. Remaining Claims

Randall makes several claims that we are also unable to review on direct appeal because they rely on matters outside this court's record. *McFarland*, 127 Wn.2d at 335. First, Randall asserts that his right to be present at trial was violated during jury deliberations when his counsel and the prosecutor were called into court and he was not present. He concedes this claim involves matters outside the record.

Next, Randall claims that the appellate record is incomplete because the transcripts he received do not include any reports of proceedings from the time of his arrest in June 2008 until November 2009. Randall is correct, the first VRP transcripts in our record is from November 2009. But because we lack an adequate record to know what happened before November 2009, we are unable to address this issue on direct appeal. *McFarland*, 127 Wn.2d at 335.

Also, Randall makes several claims for the first time on appeal. We will not review an issue raised for the first time on appeal unless the claimed error is a manifest error affecting a constitutional right. RAP 2.5(a)(3). First, Randall asserts a CrR 3.3 speedy trial right violation,

19

claiming that he was in jail for approximately two-and-a-half years before his trial started. SAG at 15-19. But violations of CrR 3.3 are not constitutionally based and cannot be raised for the first time on appeal. *State v. Smith*, 104 Wn.2d 497, 508, 707 P.2d 1306 (1985).

Next, Randall asserts that the trial court erred by admitting under ER 404(b) trace evidence of marijuana found in his backpack. Evidentiary errors are not of constitutional magnitude and because Randall did not object to the evidence's admission at trial, we will not review it on appeal. *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984).

Finally, Randall claims that the trial court should have found that the State engaged in *Brady*[12] and discovery violations because the State failed to make witnesses available for defense interviews, the State failed to disclose an e-mail from HT's pediatrician, and the trial court failed to disclose in-camera review of counseling records. In reviewing a *Brady* challenge, on direct review, we can consider only matters demonstrated by the trial record. *McFarland*, 127 Wn.2d at 335. An appellant has the burden of perfecting the record so that this court has before it all the evidence relevant to the issues on appeal. RAP 9.1(a), 9.6(a). In November 2009, Randall moved to compel production of the counseling records for in camera review. The court granted the motion for in camera review. Our record does not show any further discussion about these counseling records thus we are unable to address Randall's claims because the record is not complete enough to allow review of the claimed error. RAP 9.1(a), 9.6(a).

Similarly, in August 2010, Randall moved to dismiss all charges based in part on the State's alleged failure to make the witness available and its recent disclosure of the email from

---

[12] *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

No. 41916-5-II

HT's pediatrician when trial was scheduled about a week later. The court denied the motion to dismiss but granted Randall a continuance and ordered that the State work with Randall to make those witnesses available. Because the State provided Randall with the e-mail in August 2010, several months before his January 2011 trial, he cannot show that he was prejudiced and his claim that the State did not timely provide it fails. *Strickler v. Greene*, 527 U.S. 263, 280, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (holding that to establish a *Brady* violation, the defendant must show (1) the evidence was favorable to the defendant, (2) the State suppressed the evidence, and (3) the suppression prejudiced the defendant). And our record does not indicate any further discussion about the State making the witnesses available thus we are also unable to address this claim.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Hunt, J.

Bjorgen, J.

21