# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50949-1-II |
| Respondent, | |
| v. | |
| GREGORY LYLE SHARLOW, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Gregory Sharlow appeals his convictions of attempted first degree burglary, second degree burglary, fourth degree assault, obstructing a law enforcement officer, third degree malicious mischief, and two counts of second degree criminal trespass.

Sharlow contends that (1) the State presented insufficient evidence to support his convictions for attempted first degree burglary and second degree burglary, (2) he received ineffective assistance of counsel for his counsel's decision not to request an instruction on lesser included offenses, and (3) the trial court erred in ruling that his convictions for attempted first degree burglary and second degree burglary did not encompass the same criminal conduct. He also challenges the imposition of several legal financial obligations (LFOs).

We affirm Sharlow's convictions but remand for the trial court to reconsider the imposition of LFOs.

FACTS

Tristin Atwood was doing yard work near the driveway of her house when she felt a tug on her shirt. Startled, she turned to see a disheveled man, Sharlow, mumbling and gesturing incomprehensibly. She repeatedly told Sharlow he was trespassing and needed to leave, until finally he walked off her property and crossed the street. Sharlow was "sort of yelling" as he walked away, so Atwood went inside, locked the door, and called the police. 2 Verbatim Report of Proceedings (VRP) at 278.

While she waited for the police, Atwood heard her dog barking and some noises coming from behind her house. She went outside and saw Sharlow with both hands on the gate to her backyard "wrenching it, like he was trying to get in." 2 VRP at 288. The backyard was enclosed by a fence. Atwood went back inside and called the police again.

Officer Eric Henrichsen arrived at Atwood's house to see Sharlow laying on top of Atwood's roof. Atwood testified that in order to get onto the roof, a person would have to enter the enclosed yard and climb onto a carport adjoining the house. She testified she was "very positive" that Sharlow took this route to climb onto the roof because she observed some damage on the fence next to the carport and "heard a lot of wood breaking and snapping" while she was on the phone with the police. 2 VRP at 304.

Upon Officer Henrichsen's arrival, Sharlow then rolled off the roof, hit the ground and did a "tuck-and-roll type maneuver," and got to his feet. 1 VRP at 194. Sharlow then began walking toward Henrichsen, who told him to stop and sit down. Sharlow did not sit down, so Henrichsen started moving towards him.

At this time Atwood came out of her front door, about 20 to 25 feet away from Sharlow. As Officer Henrichsen waved at her to get back inside, Sharlow turned towards her and "started running right at her." 2 VRP at 206. Henrichsen described Sharlow as "leaning forward like really aggressively" as he ran. 2 VRP at 207. Atwood described Sharlow as running "[l]ike he was in a football game running to tackle somebody" with his arms "extended out in front of his body like he was going to grab me." 2 VRP at 298. Atwood got back inside and slammed the door shut right before Sharlow reached it. Sharlow then tried to open the door, first by turning the handle and then by repeatedly slamming into the door with his shoulder.

Sharlow then ran down the street into a parking lot. Officer Henrichsen ran after him, telling him to stop or Henrichsen would use his stun gun on him. Sharlow looked back and seeing Henrichsen holding his stun gun, sat down in the parking lot. Sharlow was then taken into custody.

The State charged Sharlow with attempted first degree burglary, second degree burglary, fourth degree assault, obstructing a law enforcement officer, third degree malicious mischief, and two counts of second degree criminal trespass. After a trial, the jury convicted Sharlow on all counts.

At sentencing, Sharlow argued that his convictions for attempted first degree burglary and second degree burglary should be considered the same criminal conduct. The sentencing court disagreed. The court then imposed sentences of 50 months for attempted first degree burglary, 20 months for second degree burglary, 364 days each for fourth degree assault, obstructing a law enforcement officer, and third degree malicious mischief, and 90 days for each count of second degree criminal trespass. The court ordered that Sharlow's sentences would run concurrently. The court also imposed an additional 18 months of community custody upon Sharlow's release.

No. 50949-1-II

Sharlow appeals.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Sharlow argues that the State presented insufficient evidence to support his convictions for attempted first degree burglary and second degree burglary. We disagree.

A.     LEGAL PRINCIPLES AND STANDARD OF REVIEW

The State must prove each essential element of a crime beyond a reasonable doubt. *State v. Chacon*, 192 Wn.2d 545, 549, 431 P.3d 477 (2018); *Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). All reasonable inferences from the evidence are drawn in favor of the State and interpreted most strongly against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence carry equal weight. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

4

B.     ATTEMPTED FIRST DEGREE BURGLARY

To prove attempted first degree burglary, the State was required to show that Sharlow had the intent to commit first degree burglary and took a substantial step toward committing the crime. RCW 9A.28.020(1). First degree burglary is defined as entering or remaining unlawfully in a building with the intent to commit a crime against a person or property inside, and the defendant must have assaulted a person or been armed with a deadly weapon while entering, inside, or in immediate flight from the building. RCW 9A.52.020(1). "The crime of attempt requires proof of two elements: (1) intent to commit a specific crime; and (2) a substantial step toward the commission of that crime." *State v. Vermillion*, 66 Wn. App. 332, 342, 832 P.2d 95 (1992). Here, the jury was instructed as follows:

> To convict the defendant of the crime of attempted burglary in the first degree as charged in count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about July 16, 2017, the defendant did an act that was a substantial step toward the commission of burglary in the first degree;
> (2) That the act was done with the intent to commit burglary in the first degree; and
> (3) That the act occurred in the State of Washington.

Clerk's Papers (CP) at 97. The court also provided the jury with the following definition of first degree burglary:

> A person commits the crime of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime against a person or property therein, and if, in entering or while in the building or in immediate flight therefrom, he assaults any person.

CP at 100.

Sharlow's claim of insufficient evidence is predicated on his belief that the State was required to prove that Sharlow actually entered Atwood's home in order to prove his intent.

5

Because Sharlow did not enter Atwood's property, Sharlow asserts that the evidence the State relied on to show that he intended to commit an assault against Atwood or that he intended to commit a crime against a person or property inside Atwood's home is "'patently equivocal.'" Opening Br. of Appellant at 11 (quoting *State v. Jackson*, 112 Wn.2d 867, 876, 774 P.2d 1211 (1989)).  He reasons that it was equally plausible that he ran toward Atwood's house and rammed into the door in order to escape Officer Henrichsen, and the State presented no other evidence showing his intent.  Essentially, he argues that the State presented insufficient evidence because its argument was "based merely on inference."  Opening Br. of Appellant at 12.

In support of his argument, Sharlow relies on *Jackson*, 112 Wn.2d at 876, which is inapplicable to this case.  Citing *Jackson*, Sharlow claims that the court "may not infer intent to commit a crime from evidence that is 'patently equivocal.'"  Opening Br. of Appellant at 11 (quoting 112 Wn.2d at 876).  However, *Jackson* involved the propriety of a jury instruction that an inference of an intent to commit a crime existed in a burglary case.  112 Wn.2d at 876.  The issue there was not whether it was reasonable for the jury to infer intent from the evidence presented, but whether it was fair to *presume*, for the purposes of the instruction, that such an intent existed.  *Jackson*, 112 Wn.2d at 876.  Here, on the other hand, the trial court did not give the instruction on inference of intent that was present in *Jackson*.  Rather, the jury was instructed on the elements of criminal attempt and first degree burglary and that the law does not distinguish between circumstantial and direct evidence in terms of their weight or value.  The jury was therefore free to draw its own reasonable conclusions from the evidence and was not instructed specifically to draw any inference of intent.

In the context of a claim of insufficiency, the fact that there may be another plausible explanation for Sharlow's actions does not mean that the evidence was insufficient for the jury to infer his criminal intent. Sharlow's challenge admits the truth of all inferences drawn from the State's evidence, including the inference that he intended to commit first degree burglary. *See Salinas*, 119 Wn.2d at 201. It was reasonable for the jury to infer from Sharlow running full speed at Atwood, with his arms outstretched "[l]ike he was in a football game running to tackle somebody," and slamming into her door that Sharlow intended to enter her house and assault her. 2 VRP at 298. We hold that Sharlow's conviction for attempted first degree burglary is supported by sufficient evidence.

C.    SECOND DEGREE BURGLARY

To prove second degree burglary, the State was required to show that Sharlow entered Atwood's fenced backyard or remained unlawfully therein with the intent to commit a crime against Atwood or her property. RCW 9A.52.030(1); RCW 9A.04.110(5) ("'Building,' in addition to its ordinary meaning, includes any . . . fenced area."). The jury was instructed on this count as follows:

> To convict the defendant of the crime of burglary in the second degree as charged in count 2, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about July 16, 2017, the defendant entered or remained unlawfully in a building;
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein; and
> (3) That the act occurred in the State of Washington.

CP at 105.

Sharlow argues that the State failed to prove that Sharlow entered Atwood's enclosed yard in order to access the roof. Although Atwood testified that in order to get on the roof, Sharlow

7

would have had to climb onto the adjoining carport, which is accessible through the fenced area, Sharlow contends that this does not preclude the possibility that he climbed onto the roof some other way that did not involve entering her yard. He claims that the evidence suggests he is "particularly agile," given his "ninja roll" off the roof and apparent speed in moving around the outside of the house and running away from Officer Henrichsen. Opening Br. of Appellant at 12; 1 VRP at 197. Furthermore, Sharlow claims, even if the evidence supports the conclusion that Sharlow entered the enclosed yard, the State did not present any evidence that he did so with the intent to commit a crime against Atwood or her property.

As noted above, the fact that there may be some alternative explanation for how Sharlow got onto the roof does not mean there was insufficient evidence to support the conclusion that he did so by entering the enclosed backyard. Viewing the evidence in the light most favorable to the State, we conclude it was reasonable for the jury to infer from Atwood's testimony about the layout of the backyard, house, and adjoining carport that Sharlow accessed the roof by entering into the fenced backyard and climbing onto the carport from there. His claim of insufficiency admits the truth of all inferences from the State's presented evidence. *See Salinas*, 119 Wn.2d at 201. Moreover, as noted above, credibility determinations are left to the jury. The evidence was sufficient to support the jury's finding that Sharlow entered the enclosed backyard.

It was also reasonable for the jury to infer that Sharlow intended to commit a crime when he entered the yard and climbed onto the roof. Sharlow was a stranger to Atwood and during their initial encounter, Atwood had repeatedly told Sharlow to leave and he refused. During this time no one else came out of the house to intervene, so the jury could reasonably have inferred that Sharlow concluded that Atwood was home alone. The jury could also infer from the fact that

8

Sharlow went around to the back of the house, that he wanted to avoid being seen. Sharlow then hid up on the roof, presumably waiting for Atwood to leave so he could either break in and steal her property or attack her.

As discussed above, Sharlow did in fact ultimately charge at Atwood and ram into her door. That this fact was the basis for his conviction for attempted first degree burglary does not preclude the jury from considering it in the context of the charge for second degree burglary. *See State v. Berg*, 181 Wn.2d 857, 872, 337 P.3d 310 (2014). Although Sharlow charged at Atwood after he entered her yard and climbed onto her roof, it was still reasonable for the jury to infer from this action that Sharlow had intended all along to commit a crime against Atwood or her property.

Given the entire timeline of events and accepting the truth of the State's evidence and all reasonable inferences drawn therefrom, there was sufficient evidence for the jury to find that Sharlow maintained an intent to commit a crime against Atwood or her property at least from the moment he entered the yard. *See Green*, 94 Wn.2d at 221-22. We hold that Sharlow's conviction for second degree burglary is supported by sufficient evidence.

## II. ASSISTANCE OF COUNSEL

Sharlow claims that he was deprived of effective assistance of counsel based on his trial counsel's decision not to propose jury instructions for attempted first degree criminal trespass, which he contends is a lesser included offense of both attempted first degree burglary and second degree burglary. We disagree.

### A.     LEGAL PRINCIPLES AND STANDARD OF REVIEW

Both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right of a criminal defendant to effective assistance of

counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). Washington follows the *Strickland* test: the defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. 466 U.S. at 687; *State v. Cienfuegos*, 144 Wn.2d 222, 226-27, 25 P.3d 1011 (2011). If one prong of the test is not satisfied, we need not examine the other prong. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012) ("We need not consider both prongs of *Strickland* (deficient performance and prejudice) if a petitioner fails on one.").

To show prejudice, the defendant must show a reasonable probability that "but for counsel's deficient performance, the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Thomas*, 109 Wn.2d at 226 (quoting *Strickland*, 466 U.S. at 694).

B.    SHARLOW WAS NOT PREJUDICED

A defendant who requests a lesser included offense instruction is entitled to it if (1) each element of the lesser offense is a necessary element of the offense charged and (2) the evidence in the case "'support[s] an inference that the lesser crime was committed.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)). Sharlow argues that counsel should have requested instructions on attempted first degree criminal trespass as a lesser included offense of attempted first degree burglary and first degree criminal trespass as a lesser included offense of second degree burglary. Even if Sharlow was

entitled to the instructions and Sharlow could demonstrate that counsel performed deficiently by not proposing them, we hold that Sharlow fails to establish that he suffered prejudice.

Sharlow asserts that had the jury been instructed on the lesser included offenses, "it was possible that they could have found guilt only on those respective charges." Opening Br. of Appellant at 19. However, it is not enough that it is "possible" the jury could have arrived at a different verdict; Sharlow must show a "reasonable probability" that, but for the lack of lesser included instructions, the outcome of his trial would have been different. *Strickland*, 466 U.S. at 694.

Sharlow has made no such showing. The jury returned verdicts of guilty on the charges of attempted first degree burglary and second degree burglary. Presuming, as we must, that the jury followed the trial court's instructions and would not have convicted Sharlow of either attempted first degree burglary or second degree burglary unless the State met its burden of proof as to those counts, the availability of a lesser charge on which to convict would not have made a difference. *Strickland*, 466 U.S. at 694 ("[A] court should presume . . . that the judge or jury acted according to the law."); *Grier*, 171 Wn.2d at 43-44. Sharlow therefore fails to demonstrate that had the jury been instructed on the lesser included offenses he suggests here, the jury would have departed from the charged offenses to convict Sharlow instead of the lesser included offenses. We hold that Sharlow has not shown prejudice.

### III. SAME CRIMINAL CONDUCT

Sharlow argues that the trial court erred in not finding that his attempted first degree burglary and second degree burglary convictions encompass the same criminal conduct. We hold that the trial court did not abuse its discretion.

A.    LEGAL PRINCIPLES AND STANDARD OF REVIEW

All current and prior convictions are generally counted separately when determining a defendant's offender score, but if concurrent offenses encompass the same criminal conduct, they are treated as one crime for the purposes of calculating the sentence. RCW 9.94A.589(1)(a). Crimes encompass the same criminal conduct if they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a).

We "will reverse a sentencing court's determination of 'same criminal conduct' only on a 'clear abuse of discretion or misapplication of the law.'" *State v. Haddock*, 141 Wn.2d 103, 110, 3 P.3d 733 (2000) (quoting *State v. Elliott*, 114 Wn.2d 6, 17, 785 P.2d 440 (1990)). "'[T]he statute is generally construed narrowly to disallow most claims that multiple offenses constitute the same criminal act.'" *State v. Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013) (alteration in original) (quoting *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)). Hence, "when the record supports only one conclusion on whether crimes constitute the 'same criminal conduct,' a sentencing court abuses its discretion in arriving at a contrary result. But where the record adequately supports either conclusion, the matter lies in the court's discretion." *Graciano*, 176 Wn.2d at 537-38 (citations omitted). It is the defendant's burden of establishing that the crimes constitute the same criminal conduct. *Graciano*, 176 Wn.2d at 539.

B.    THE TWO CRIMES DID NOT INVOLVE THE SAME CRIMINAL INTENT

Here, although the crimes of attempted first degree burglary and second degree burglary occurred in the same area, around the same time, and with the same victim, the trial court declined to consider them as the same criminal conduct because it concluded that each crime was the result of separate decisions by Sharlow. In other words, Sharlow's intent changed between one crime

12

and the next as he completed the crime of second degree burglary by entering the yard and climbing onto the roof and then committed the separate crime of attempted first degree burglary by charging at Atwood and slamming into her door.

The relevant inquiry for the intent prong is to what extent Sharlow's criminal intent, viewed objectively, changed from one crime to the next. *State v. Tili*, 139 Wn.2d 107, 123, 985 P.2d 365 (1999). This inquiry involves looking to the relevant statutes to identify the objective intent requirement for each crime. *State v. Chenoweth*, 185 Wn.2d 218, 223, 370 P.3d 6 (2016). In *Chenoweth*, the court held that the defendant's convictions for child rape and incest, though based on the same physical act, nevertheless involved separate criminal intent under the relevant statutes, and therefore did not encompass the same criminal conduct. 185 Wn.2d at 223. The court reasoned that "[t]he intent to have sex with someone related to you differs from the intent to have sex with a child." *Chenoweth*, 185 Wn.2d at 223.

We accordingly examine the statutory text for each crime at issue here to determine whether the crimes of attempted first degree burglary and second degree burglary, viewed objectively, have the same criminal intent. Attempted first degree burglary requires that the defendant have the intent to commit first degree burglary, which requires that he intend to commit a crime against a person or property, while entering or remaining unlawfully in a building and that he either is armed with a deadly weapon or assaults a person. RCW 9A.28.020(1); RCW

9A.52.020(1). Second degree burglary requires that the defendant have intent to commit a crime against a person or property while entering or remaining unlawfully in a building. RCW 9A.52.030(1).

Hence, first degree burglary and second degree burglary have the same criminal intent: to commit a crime against a person or property inside the building. However, *attempted* first degree burglary carries the additional element that the defendant intended to commit the specific crime of first degree burglary, which includes the additional element of either being armed with a deadly weapon or assaulting a person while entering or remaining in the building or in immediate flight therefrom. RCW 9A.52.020(1); *see also State v. DeRyke*, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003) (crime of attempt requires "intent to commit a specific crime"). In other words, to satisfy the intent element of attempted first degree burglary, Sharlow had to have the intent of assaulting Atwood, an element not required in second degree burglary. *See Vermillion*, 66 Wn. App. at 342; *State v. O'Neil*, 24 Wn.2d 802, 808, 167 P.2d 471 (1946) (for a conviction of attempted first degree burglary, "the establishment of the requisite degree of burglary must rest upon an assault accompanying the burglarious entry"), *overruled on other grounds by State v. Ng*, 110 Wn.2d 32, 750 P.2d 632 (1988).

In *Vermillion*, the defendant used a false name and claimed he was interested in purchasing a home as a pretext to sexually assault a female realtor. 66 Wn. App. at 336-37. In a later incident, he again used a false name and claimed to a different female realtor that he wanted to purchase a home in order to meet with her alone at the house, but was apprehended by the police when he met her. *Vermillion*, 66 Wn. App. at 338-39. He was later convicted of attempted first degree burglary with respect to the second incident. On appeal, the court rejected Vermillion's argument that the

State had failed to show intent to commit an assault against the second victim because his intent was established by his virtually identical prior conduct toward the first victim. *Vermillion*, 66 Wn. App. at 342. Thus, the court recognized that attempted first degree burglary required intent to commit an assault, as assault is a necessary element of first degree burglary and the crime of attempt requires an "intent to commit a specific crime." *Vermillion*, 66 Wn. App. at 342.

Hence, viewed objectively, the crimes of attempted first degree burglary and second degree burglary have different intent elements, so Sharlow's objective criminal intent shifted from one crime to the next. *See Tili*, 139 Wn.2d at 123.

Sharlow argues that the two crimes required the same criminal intent because the State argued at trial that Sharlow had the same intent for both crimes: to break into Atwood's house and take things or assault her. However, as noted above, the inquiry is not whether Sharlow's subjective intent was the same for both crimes, but whether both crimes, when viewed objectively, have the same intent requirements. *Chenoweth*, 185 Wn.2d at 223. Sharlow's conviction for attempted first degree burglary required an intent to assault Atwood, whereas his conviction for second degree burglary required merely an intent to commit any crime against Atwood or her property.

We hold that Sharlow has not met his burden to establish that his crimes encompass the same criminal conduct. *See Graciano*, 176 Wn.2d at 539. Hence, the trial court did not abuse its discretion in ruling that Sharlow's offenses did not involve the same criminal conduct.

IV. LEGAL FINANCIAL OBLIGATIONS

Sharlow challenges the imposition of the criminal filing fee, deoxyribonucleic acid (DNA) collection fee, community supervision fee, and interest accrual on nonrestitution LFOs. We remand for the trial court to reevaluate whether to impose LFOs.

In 2018, the legislature amended former RCW 36.18.020(2)(h) to prohibit the imposition of discretionary costs or the criminal filing fee if a defendant is indigent as defined in RCW 10.101.010(3)(a) through (c). LAWS OF 2018, ch. 269, §§ 6(3), 17. The legislature also amended former RCW 43.43.7541 (2015) to authorize the imposition of a DNA collection fee only if the State has not "previously collected the offender's DNA as a result of a prior conviction." LAWS OF 2018, ch. 269, § 18. And RCW 10.82.090 was amended to prohibit interest accrual on nonrestitution LFOs as of June 7, 2018. LAWS OF 2018, ch. 269, § 1. In *State v. Ramirez*, the Supreme Court held that the 2018 amendments to the LFO statutes apply to cases pending on direct review and not final when the amendments were enacted. 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

The 2018 amendments apply here because this case was not final when the amendments took effect. *Ramirez*, 191 Wn.2d at 747. We therefore remand this case to the trial court to reconsider all LFOs imposed based on *Ramirez* and these statutory amendments.

No. 50949-1-II

CONCLUSION

We affirm Sharlow's convictions and remand for the trial court to reconsider the imposition of LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MELNICK, P.J.

SUTTON, J.

17